OPINION OF THE COURT
Richard Lee Price, J.
Petitioner Benjamin Perrotta brings this motion to restore his CPLR article 78 proceeding to the calendar for consideration by this court on the merits. By order dated April 27, 1983, this court denied respondents’ motion to dismiss this proceeding because of petitioner’s failure to exhaust his administrative remedies. That motion was denied for the reasons set forth in this court’s decision of March 17, 1983. As directed in that decision, respondents have now filed their answer to the petition.
Petitioner’s motion to restore is granted, and upon consideration of the proceeding upon its merits, judgment is declared in the petitioner’s favor.
The facts supporting the present decision are recited, and found, as follows:
Sometime in February of 1980 petitioner submitted plans to respondent Olin (Department of Buildings, Queens Borough Superintendent) for approval. The plans provided, by designation, for the construction of a single-family home. The plans were approved on February 20, 1981, and a building permit was issued on March 23,1981. Pursuant to the issuance of that permit, petitioner began construction in April of 1981.
*684 On August 19, 1981, petitioner received a letter from respondent Olin wherein Olin indicated that certain community groups had complained that petitioner was constructing a two-family dwelling. Olin asked to see petitioner to discuss this allegation.
Petitioner met with Olin on August 28, 1981, at which time Olin directed petitioner to remove a toilet bowl from the basement and two bathrooms on the first floor. Petitioner refused, left the meeting, and was informed by letter dated September 2,1981 that his building permit had been revoked.
On September 4, 1981, petitioner had a conversation with respondent Dennis wherein that individual told petitioner to submit amended plans “eliminating a front staircase” and “raising the elevation of the building.”
Amended plans were submitted on September 17 but were disapproved on September 18 because “the partition enclosing the front staircase suggests a two-family dwelling.” Amended plans submitted on September 21 were also disapproved, for the same reason.
On October 9 respondent Fruchtman issued a decision sustaining respondent Olin. Contemporaneously therewith, petitioner had a telephone conversation with a deputy commissioner of buildings who stated that he would recommend approval of petitioner’s September 17 plans if petitioner would execute a deed restriction (restricting his use to a single-family dwelling).
On October 15 petitioner submitted amended plans eliminating the enclosure around the front staircase. These plans were disapproved because of the bathrooms on the first floor and the toilet bowl in the basement.
On October 28 petitioner hired an attorney to negotiate with respondent. Apparently some negotiations took place and an agreement was prepared providing for the following plan amendments:
(1) Removal of the front staircase
(2) Change in elevation
(3) Designation of “cellar” to read “basement”
(4) Installation of fireplaces on the first and second floors
*685 (5) Filing of letter from Consolidated Edison indicating that only one meter would be installed
(6) Execution of a deed restriction.
This agreement was never signed by respondent Olin.
On March 10, 1982, petitioner filed further amended plans omitting the “wash basin” and “water closet” from the basement and two full bathrooms from the first floor. A handwritten note on the face of the plans, signed by petitioner, states that petitioner submits the plans “under protest and extreme duress.” Respondent Olin, by letter dated March 30, 1982, notified the petitioner that “the department has reinstated the application, approved the plans as amended and will issue a new building permit when applied for.”
Unfortunately, on April 7, 1982, the Inspector General notified respondent Olin that an investigation had taken place at petitioner’s construction site and a list of nine “objections” compiled. The letter, signed by a confidential investigator, continued: “Our basic question is why the plans were initially approved only to have the permit revoked later.”
Olin notified petitioner of the objections on April 15, 1982, stating that the permit would again be revoked if the objections were not eliminated by May 14, 1982.
Subsequently petitioner again filed amendments to his plans, and apparently all the objections were satisfied but for two. By letter dated June 22,1982, petitioner requested reconsideration of those objections but Commissioner Fruchtman concurred with Olin’s negative decision by memo dated July 27, 1982.
This article 78 proceeding was instituted December. 7, 1981, contemporaneously with petitioner’s continued negotiations with respondents after the first revocation of his permit.
As was indicated by this court in the March 17, 1983 decision, the central issue in this case (on the merits), simply stated, is whether petitioner’s building permit was properly revoked in the first instance on September 2, 1981. And as this is an article 78 proceeding, the question must further be asked in the context of whether the re *686 spondents have acted arbitrarily, capriciously, or against the weight of law in revoking petitioner’s permit.
As respondents correctly state, “[A] municipal permit issued illegally or in violation of the law, or under a mistake of fact, confers no vested right or privilege on the person to whom the permit has been issued and it may be revoked notwithstanding that he may have acted upon the permit; any expenditures made in reliance upon such permit are made at his peril.” (Commonwealth v Flynn, 21 Pa Commonwealth Ct 264, 269.)
Because of the recognizably harsh nature of this rule, exceptions were inevitable. Most cases applying the general rule and/or either of its exceptions, have concerned permits issued and construction begun before a zoning law change which results in a need to complete construction of an admittedly nonconforming use.
The so-called “vested rights” exception is simply stated in the following manner: “A vested right to complete a nonconforming building matures when substantial work is performed and obligations are assumed in good faith reliance on a permit legally issued”. (Reichenbach v Windward at Southampton, 80 Misc 2d 1031,1034, affd 48 AD2d 909.)
The doctrinal exception of “equitable estoppel”, on the other hand, comes into play when the permit is not, technically, legally issued in the first place — either because of mistake of fact or law on the part of the issuing authority. “ ‘[When] a government * * * subdivision acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice, that subdivision should be estopped from asserting a right or defense which it otherwise could have raised’.” (Rosbar Co. v Board of Appeals, 77 AD2d 568, 569 [dissenting opn], citing Bender v New York City Health & Hosps. Corp., 38 NY2d 662, 668.)
In the case now before me, petitioner’s permit was initially revoked because respondent Olin, who had originally approved the plans, subsequently changed his mind and decided that the same plans “indicated” the construction of a two-family rather than a one-family home. Respondent Olin apparently came to this conclusion because of the number of bathrooms petitioner had included in his plans.
*687 The court finds that respondent Olin’s reconsideration and concomitant action was the result of neither a mistake of law nor one of fact. Petitioner’s plans do not, as a matter of legal interpretation, necessarily indicate a two-family dwelling, there exists no statute or directive declaring that plans for homes containing more than “X” number of bathrooms shall be presumed a two-family dwelling. Nor has there been a mistake of fact — petitioner asked for a permit to construct a single-family home, respondent Olin understood this to be petitioner’s request, and petitioner attempted to construct a single-family home. Neither may respondent Olin claim he was unaware of the number of bathrooms petitioner planned to include in his home — the number has been clearly indicated on the plans since the inception of this controversy.
With respect to the initial revocation, the “vested rights” theory will apply. This court finds that the permit was lawfully issued. Respondent Olin neither exceeded his authority in issuing it nor mistakenly interpreted the zoning law. What he has done is engage in speculation and suspicion, and in light of petitioner’s considerable financial expenditures and understandable reliance, such speculation and suspicion shall not be allowed to defeat petitioner’s right to complete construction. (See Davis Dev. Corp. v Town Bd., NYLJ, March 2, 1973, p 20, col 8, affd without opn 42 AD2d 705.)
The only additional problem before this court is whether the “second” revocation, that based upon the Inspector General’s objections, shall be allowed to stand. Apparently petitioner views this second revocation as merely a continuation of the first, while respondents view it as separate and distinct. To avoid future litigation, this court will consider it a separate revocation and determine the propriety of its issuance.
The doctrine of equitable estoppel shall be allowed to apply to the “second” revocation. Though it may in fact be true that the original permit was issued in the face of certain violations (i.e., insufficient front yardage or improper elevation), and therefore may be considered technically unlawfully issued, because of petitioner’s good-faith reliance, substantial expenditures, and extreme misuse as *688 a result of the initial improper revocation, respondents shall not now be permitted to revoke petitioner’s permit for even admitted violations. Additionally, compliance with mere technical matters shall be viewed as curable irregularities, not as grounds for revocation. (Matter ofBayswater Health Related Facility v Karagheuzoff, 37 NY2d 408.).
Respondent Olin’s actions are viewed by this court as capricious. “Capricious action in a legal sense is established when an administrative agency on identical facts decides differently”. (Matter of Lefrak Forest Hills Corp. v Galvin, 40 AD2d 211, 217, affd 32 NY2d 796.) The action taken on the “second” revocation was simply against the weight of law.
So stated, respondents’ September 2, 1981 and May 14, 1982 revocations are annulled; respondents are directed to approve petitioner’s amended plans dated September 17, 1981, and to reinstate petitioner’s building permit. Petitioner is directed to cure any technical irregularities that may continue to exist.