In the Matter of BENJAMIN PERROTTA, Respondent, v CITY OF
NEW YORK et al., Appellants.

First Department, March 21, 1985

**APPEARANCES OF COUNSEL**

*Dana Robbins* of counsel (*Stephen J. McGrath* with her on the
brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellants.

*Allen J. Rothman* of counsel (*Jessel Rothman* and *Eric
Michael Pasinkoff* with him on the brief; *Jessel Rothman, P. C.,*
attorney), for respondent.

**OPINION OF THE COURT**

MILONAS, J.

On February 20, 1981, the New York City Department of
Buildings approved petitioner's application for a permit to build

a single-family, two-story house at 43-05 Douglaston Parkway in Queens, an area zoned for single-family detached residences. After petitioner had commenced construction, neighborhood residents brought to the attention of the Buildings Department the fact that petitioner's structure did not seem to conform to the required zoning regulations. Although petitioner had been granted a permit for a single-family dwelling, the house under construction had two bathrooms on both the first and second floors and an aboveground basement with a toilet. The substitution of a basement for the underground cellar made the building a three-story rather than the two-story structure approved by the Buildings Department. In addition, partitions were planned to surround the basement and first-floor stairwells, thus creating separate entrances and dividing the building into separate units. When petitioner subsequently refused to make any alterations in his proposed construction, the Buildings Department, pursuant to a letter dated September 2, 1981, informed him that the approval and permit for the building had been revoked.

Petitioner's architect filed a set of amended plans on September 17, 1981. These plans were rejected since they still contained proposals for partitions in the basement and an enclosed stairwell on the first floor, suggesting an arrangement for a two-family dwelling. Petitioner then submitted further amended plans on September 21, 1981, which were also deemed unacceptable for substantially the same reasons. Upon appeal to the Commissioner of the Buildings Department by petitioner's architect, the revocation of the approval and permit was sustained. On October 15, 1981, petitioner's architect offered yet another revision, this time eliminating the basement partitions and the stairwell enclosures. These latest plans were turned down on October 26, 1981 for failing to overcome the objection to the structure's apparent usage as a two-family house. In that regard, it was noted that the provision for two three-piece (full) bathrooms on both the first and second floors was indicative of a two-family dwelling and that the amended proposal was in violation of Zoning Directive No. 5 of 1977, which prohibited the installation of plumbing fixtures on the basement level.

On March 10, 1982, petitioner presented an amendment that omitted a wash basin and toilet from the basement and two bathtubs from the first floor. The Buildings Department, pursuant to a letter dated March 30, 1982, advised petitioner that the modified plans were now acceptable. Petitioner, however, did not apply for a new building permit, and on April 7, 1982, the Office of the Inspector General of the Buildings Department raised nine additional objections to petitioner's proposals and

requested that the plans be reexamined. Thereafter, the Office of the Borough Superintendent of Queens confirmed these objections and informed petitioner that his failure to satisfy them could result in the revocation of approval. Although petitioner filed certain modifications in response to the new objections, he was nonetheless found not to have met the objections which pertained to the front yard setback and the height of the front wall. By letter dated June 22, 1982, petitioner's architect asked that the Commissioner of the Buildings Department reconsider the remaining objections, but reconsideration was denied. The instant CPLR article 78 proceeding ensued. The petition sought a judgment directing respondents to rescind revocation of the plans accepted on February 20, 1981, approve the amended proposals filed on September 17, 1981 and declare unconstitutional Zoning Directive No. 5.

Respondents cross-moved for dismissal based upon petitioner's failure to exhaust his administrative remedies. Special Term granted the cross motion and dismissed the petition. Petitioner then moved for reargument, which was granted, and, upon reargument, Special Term denied the motion to dismiss. Petitioner was given leave to renotice the petition, and respondents were directed to file an answer on the merits. In their answer, respondents asserted that revocation of the building permit was not arbitrary or capricious in view of petitioner's refusal to make the structural modifications requested by the Buildings Department, that petitioner had not exhausted his administrative remedies and that petitioner could not have a vested right based upon construction under the building permit since it had been improperly approved. Petitioner claimed in reply that because construction was "substantially" complete when the permit had been revoked, he had a vested right therein.

Special Term granted the petition, annulled the revocation of the building permit and the subsequent approval of the amended plans and directed respondents to reinstate petitioner's permit (122 Misc 2d 683). According to the court, a vested right to complete a nonconforming building matures when substantial work is performed and obligations are assumed in good-faith reliance upon a legally issued permit. In the matter before it, the court stated, petitioner's permit was revoked because respondent Philip Olin, Borough Superintendent of Queens, who had originally approved the plans, thereafter changed his mind and decided that the same plans indicated the construction of a two-family rather than a one-family home. However, neither in

law nor in fact does the presence of a certain number of bathrooms presuppose the existence of a two-family dwelling. The building permit was, therefore, lawfully issued, the court concluded, and in light of petitioner's considerable financial expenditures and understandable reliance, the vested rights theory is applicable. As for the withdrawal of approval for the amended plans, the court found that respondents were equitably estopped from taking such action. The reason for this was that: "Though it may in fact be true that the original permit was issued in the face of certain violations * * * and therefore may be considered *technically* unlawfully issued, because of petitioner's good-faith reliance, substantial expenditures, and extreme misuse as a result of the initial improper revocation, respondents shall not now be permitted to revoke petitioner's permit for even admitted violations. Additionally, compliance with mere technical matters shall be viewed as curable irregularities, not as grounds for revocation" (122 Misc 2d 683, 687-688, *supra*).

At the outset, it should be noted that petitioner contends that since respondents did not appeal Special Term's order granting the motion to reargue and, upon reargument, denying the motion to dismiss the complaint for failure to exhaust administrative remedies, the doctrine of the law of the case bars them from raising that issue in all subsequent proceedings in the same case. However, CPLR 5501 (a) (1) states that an appeal from a final judgment brings up for review "any non-final judgment or order which necessarily affects the final judgment". Additionally, the law of the case rule has no " 'binding' force on appeal since the appellate court is not a co-ordinate, but a higher tribunal" (*Martin v City of Cohoes,* 37 NY2d 162, 165).

New York City Charter § 666 (7) (a) expressly provides that the Board of Standards and Appeals shall have jurisdiction over appeals from determinations made by the Commissioner of the Buildings Department. Petitioner's failure to appeal the revocation of his building permit to the Board of Standards and Appeals precludes him from bringing the present article 78 proceeding. Although it is true that administrative remedies need not be exhausted prior to the commencement of an action which challenges the constitutionality of a statute or ordinance (*Loretto v Teleprompter Manhattan CATV Corp.,* 53 NY2d 124; *Matter of Grimpel Assoc. v Cohalan,* 41 NY2d 431), petitioner herein does not allege that the single-family zoning of his property is itself unconstitutional. Rather, he argues that respondents' interference with his "vested rights" under the permit was an unconstitutional taking. In that connection, petitioner contends that relevant legal authority merely holds that

exhaustion of administrative remedies is not required where a zoning ordinance is attacked as confiscatory, but that does not mean that exhaustion is necessary in all other kinds of attacks, citing *Watergate II Apts. v Buffalo Sewer Auth.* (46 NY2d 52).

In *Watergate II Apts.* (*supra*), the Court of Appeals declared that the exhaustion rule need not be followed where an agency's action is challenged as either unconstitutional or wholly beyond its grant of power. However, that case concerned an attempt by the Buffalo Sewer Authority to levy sewer rents and is not at all comparable to the situation before us. Indeed, the rationale for allowing the circumvention of the administrative appeal process in certain narrowly defined instances (that administrative agencies are not in a position to pass upon, for example, the constitutionality of a legislature enactment) is simply not applicable here. A determination as to whether petitioner had vested rights under his building permit must, of necessity, involve an examination of the validity of the permit, as well as compliance with technical provisions of the Zoning Resolution, and this is clearly an appropriate inquiry for agency expertise. Moreover, even if a claim of unconstitutional interference with a vested right could be the basis for direct access to the courts, petitioner, in fact, had no vested rights under the permit in question.

Administrative Code of the City of New York § C26-118.7 empowers the Commissioner of Buildings to revoke a building permit which was mistakenly issued. Petitioner applied for and was granted a permit to build a two-story, single-family house in a neighborhood zoned for single-family residences. After construction had been undertaken, the Buildings Department became aware that the building being erected seemed to be a two-family dwelling. The house had two full bathrooms on each of the first and second floors, a toilet in the basement and an enclosed stairwell in the basement and first floor, suggestive of a separate entrance. Further, construction did not conform to the approved plans in one significant respect — what was indicated in the plans as a belowground cellar turned out actually to be an aboveground basement, thereby rendering the structure three stories instead of two.

While petitioner's dwelling may indeed have been substantially constructed by the time his permit was withdrawn, the building was not the same as that which had appeared in the plans. Special Term ordered the reinstatement of the permit on the theory that a developer who has substantially completed the work in reliance on a valid permit possesses a vested right to continue, even where there is a violation of current zoning

regulations. However, the permit herein seems not to have been valid in the first place since the Buildings Department apparently approved petitioner's proposals based upon its initial failure to perceive that the design submitted by him represented plans for a two-family residence. In that regard, vested rights are not acquired where there is reliance upon an invalid permit. (*Matter of Natchev v Klein,* 41 NY2d 833; *Matter of Jayne Estates v Raynor,* 22 NY2d 417; *Matter of Albert v Board of Stds. & Appeals,* 89 AD2d 960.) Accordingly, "the action of the commissioner in the exercise of his authority to revoke permits issued in error for failure to comply with code provisions cannot be characterized as arbitrary or capricious" (*Matter of Natchev v Klein, supra,* at p 834). Yet, regardless of whether or not the permit had been mistakenly issued, by erecting an aboveground basement, petitioner was not in compliance with the design which had been accepted. Unlike the situation in *Matter of Temkin v Karagheuzoff* (34 NY2d 324) the zoning ordinances existing at the time of the granting of the permit did not allow the type of construction which was intended herein.

Following the revocation of petitioner's building permit, he presented a series of amended plans. These were all considered unsatisfactory until the Buildings Department, by letter dated March 30, 1982, approved the latest proposal and advised petitioner that it would issue him a new building permit upon his application for one. However, petitioner never requested a new building permit, and the approval subsequently lapsed under Administrative Code § C26-108.8. At any rate, the Buildings Department rescinded its approval after an inquiry by the Inspector General revealed that petitioner's plans contained nine zoning violations, two of which petitioner did not ultimately rectify. Thus, Special Term was incorrect in making reference to a second revocation of the building permit. Moreover, the Buildings Department may not grant a permit for a structure which is not in compliance with the relevant zoning ordinances (Administrative Code § C26-20.0). The general rule is that estoppel is unavailable against a public agency (*Public Improvements v Board of Educ.,* 56 NY2d 850; *Matter of Hamptons Hosp. & Med. Center v Moore,* 52 NY2d 88).

Consequently, judgment of the Supreme Court, New York County (Richard Lee Price, J.), entered on March 18, 1984, which annulled respondents' revocations of petitioner's building permit for the construction of a residential structure in Douglaston Parkway in Queens and directed that respondents approve petitioner's amended building plans and reinstate the building

permit for the premises in question, should be reversed, on the law, the petition pursuant to CPLR article 78 denied and respondents' determination reinstated, without costs or disbursements.

SULLIVAN, J. P., FEIN and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, entered on March 18, 1984, unanimously reversed, on the law, the judgment vacated, the petition pursuant to CPLR article 78 denied and respondents' determination reinstated, without costs and without disbursements.