OPINION OF THE COURT
Irving Rosen, J.
Defendant moves for an order pursuant to CPLR 4404 (a) *136 setting aside the decision of the court dated December 17, 2001 and for a new trial. Alternatively, defendant moves for summary judgment pursuant to CPLR 3212.
The motion is granted to the limited extent that movant’s time to make this motion is extended to the date of making thereof in the interests of justice and to remove Sasenakiene Balasar as a party plaintiff and to dismiss the action as to him personally. Summary judgment as posttrial relief is inappropriate since the trial itself showed that several questions of fact were involved. As discussed below, the remainder of the motion is denied.
The Lateness of the Motion
Good cause exists for excusing the lateness of the motion (CPLR 2004; Casey v Slattery, 213 AD2d 890). Here, it was necessary for defendant to retain counsel and obtain the transcript of the trial for this motion, involving a considerable period of time. In addition, plaintiff has not shown to have been prejudiced in any way by the granting of this extension.
The Licensing Issues
Initially, it is noted that the complaint for the two plaintiffs herein alleged: “Plaintiff is a licensed contractor who engages * * * in business in the State of New York.” The box of the pro se answer form for general denial was not filled in. The box below was not filled in either, but an affirmative defense was stated: “I did not owe nothing I have chick [sic] paid in Full.” A $6,000 counterclaim was also asserted for failure of plaintiff to finish the work which was allegedly performed over a five-month period.
The general denial absence, although equivalent to an admission, given the clear possibility that a mere oversight existed, will be treated as such. It is also noted CPLR 3015 (e) requires a statement in the complaint of the licensee, the name, number and the licensing authority, which was absent, but amendable. Given the liberality afforded defendant above concerning her answer, the plaintiffs’ pleading failure will also be treated as an oversight due to ineptitude of counsel, since the requirements are clearly evident in CPLR 3015 (e), in any event correctable and amendable pursuant to CPLR 3025 (c), at any time.
Plaintiffs’ attorneys are not to be congratulated in the unprofessional manner they pleaded and processed this case. *137 The policy of the law, however, is to promote a resolution of disputes on the merits (Bell v Toothsavers, Inc., 213 AD2d 199; Balint v Marine Midland Bank, 112 AD2d 1023).
The crux of defendant’s posttrial position concerning licensing is that the individual plaintiff herein, a party plaintiff, was not licensed as a salesperson, although it is evident that the corporate plaintiff was licensed as a home improvement contractor for the period concerned. Thus, defendant asserts such absence at the time of contracting and performance precludes recovery. It appears that the salesperson’s license of plaintiff, Sasenakiene Balasar, the corporate principal, expired on December 31, 1992 and was not renewed until February 17, 1997. Section 20-386 (5) of the Administrative Code of the City of New York defines “contractor” as:
“5. ‘Contractor’ means any person or salesperson, other than a bona fide employee of the owner, who owns, operates, maintains, conducts, controls or transacts a home improvement business and who undertakes or offers to undertake or agrees to perform any home improvement or solicits any contract therefor, whether or not such person is licensed or subject to the licensing requirements of this subchapter, and whether or not such person is a prime contractor or subcontractor with respect to the owner.”
A salesperson soliciting a home improvement contract is a “contractor” under this section.
Section 20-386 (9) of the Administrative Code defines “salesperson” as:
“9. ‘Salesperson’ means any individual who negotiates or offers to negotiate a home improvement contract with an owner, or solicits or otherwise endeavors to procure in person a home improvement contract from an owner on behalf of a contractor, or for himself or herself should the salesperson be also the contractor, whether or not such person is licensed or subject to the licensing requirement of this subchapter.”
Section 20-387 (a) of the Administrative Code provides: “No person shall solicit, canvass, sell, perform or obtain a home improvement contract as a contractor or salesperson from an owner without a license therefor.” (Emphasis supplied.)
The contention that the corporate plaintiff should not be entitled to recover because of the absence of a home improve *138 ment salesperson’s license presents an issue of apparently first impression since research has not elicited any case law on the subject. The court has inquired of the Office of Counsel of the New York City Department of Consumer Affairs (hereinafter department) and was informed there is no legislative history on the issue, but that practice of the department requires that any salesperson acting on behalf of a contractor, or employed by a contractor, or who is a contractor, is required to be separately licensed as a salesperson; that the absence of a license would constitute a misdemeanor under section 20-401 (1) of the Administrative Code. However, the department had no administrative experience with this dichotomy and would take no position. It is most significant that the word “or” appears in the section. The logical converse is that a contractor who has a license may “solicit * * * perform or obtain a home improvement contract.”
This court holds that the absence of a salesperson’s license by the corporate plaintiff or its principal should not defeat recovery. The corporate plaintiff was duly licensed to perform home improvement contracting work. The purpose of the Code provisions were to protest against fraudulent and abusive practices in the home improvement business (Mortise v 55 Liberty Owners Corp., 102 AD2d 719, affd 63 NY2d 743; Administrative Code § 20-385; see also, McKinney’s Cons Laws of NY, Book 1, Statutes § 96 [concerning consideration of the spirit and purpose of a statute]). Sufficient protection is given to the homeowner when the contractor performing the work is licensed, thus subject to regulation by the agency. Nothing is added, prejudicing or protecting the defendant, under the circumstances here, by requiring an additional license as a condition for recovery. In short, no additional protection to the defendant in the performance of the work is missing because of absence of a salesperson’s license. In the event of fraudulent or deceptive practice by the contractor, its license may be revoked, and it may be prosecuted criminally as well as civilly by the homeowner. Here the issues between the parties are the value of the work to the extent performed, the alleged defects in performance, the length of time of performance and defendant’s counterclaim for alleged unfinished work. The issues above do not implicate the purposes of the licensing statute, to wit, deterrence of fraudulent, deceptive and abusive practices. It would be bizarre to interpret the statute in a convoluted manner as to deny recovery where the home improvement contractor was in fact licensed and performed work.
*139 The Right to Counsel
Defendant contends that she was unfamiliar with the legal process and how a trial would be conducted, inferring that she was knowledgeable about small claims and landlord and tenant trials. Prior to the submission of this motion a conference was held with counsel for both sides. After discussing the issues and determining that memoranda of law should be submitted by both counsel, inquiry was made to both counsel as to whether the motion was otherwise ready for submission. Both counsel stated that the motion papers were complete and the motion should be marked submitted subject to the submission of memoranda of law requested by the court which would be delivered to chambers. The defendant herein has not refuted the statements contained in the affirmation and affidavit of plaintiffs counsel and the individual plaintiff, Sasenakiene Balasar, in opposition to this motion that assert, in sum and substance, that on previous pretrial conference occasions, she was advised by “judicial assistants” that she could and should retain counsel to represent her at trial. The defendant elected not to heed this advice and did not retain an attorney. After having so elected to proceed to trial without an attorney and lost, the defendant now seeks a second bite of the apple. Defendant now asserts the following, in sum and substance:
1. That she “assumed that the trial in this would be similar to landlord-tenant or small claims proceedings.”
2. That “[t]hese proceedings were informal, and consequently did not require the assistance of an attorney.”
3. That she “did not know that I could call witnesses at this trial, or that I should have prepared questions for plaintiff.”
4. That she did not recognize the necessity to take notes while plaintiff was testifying and consequently she could not remember many of the details of plaintiffs testimony, which impaired her ability to properly question him.
5. That she felt unprepared and intimidated and was therefore unable to elicit the important points of her defense.
6. That her ability to communicate in English is often marred because she is a native of Guyana.
These arguments are disingenuous at best. Defendant admits to a familiarity with landlord-tenant and small claims proceedings, apparently having been involved in them on previous occasions. While waiting for her case to be called in both landlord-tenant and small claims proceedings defendant presumably had an opportunity to observe numerous trials in *140 both forums. In small claims proceedings while litigants often appear pro se it is not uncommon for one of the parties to appear by attorney. Furthermore, witnesses are often called by both sides and are subject to cross-examination. For defendant to now claim that she was unaware of these rights is simply not credible. Said claim is even more incredible when applied to proceedings in the landlord-tenant portion of the court. There the overwhelming majority of landlords are represented by counsel as are many tenants. The trials conducted there are not informal proceedings. The parties thereto are bound by the law and rules of evidence. Defendant’s claim of ignorance amounts to putting blinders on in view of her contacts with the court system. In addition thereto, the very fact that plaintiffs were represented by counsel would necessarily infer that she may be overmatched and that she should obtain counsel. The fact that she observed plaintiffs proceeding throughout the case with an attorney must necessarily infer to her that she had the same right. Instead the defendant made a conscious choice not to incur the expense of hiring a lawyer. Finally, prior to the instant motion the defendant never expressed or demonstrated an inability to communicate or comprehend English. The defendant’s statements are merely conclusory and are devoid of any evidentiary proof.
The court notes that pursuant to CPLR 321 (a) a litigant has a right to self-representation and “may prosecute or defend a civil action in person or by attorney.” No case law has been submitted in support of the proposition that in an ordinary type of civil contract trial case a litigant is required as a matter of constitutional requirement or statutory right to be advised of a right to counsel.
The Absence of a Permit
The absence of a permit pursuant to section 26-207 of the Administrative Code for the work does not seem to have been raised during the trial. There was no evidence one way or the other that plaintiffs had or did not have a permit for the work. Article 2 of title 26 (ch 1, subch 3 [“Building Construction”]), wherein said section is located, does not impose this duty on any specific person. In this regard it would appear that both parties are in pari delicto. Both sides are deemed to have known of this requirement. The owner, in addition to the contractor, is bound by the permit requirement (Matter of Perrotta v City of New York, 107 AD2d 320; see Administrative Code § 26-248 [a]; § 26-125).
*141 The Claim of Full Payment
The testimony was that on July 12, 1997 a check was given for $7,000 payable to plaintiff with the statement “Paid full” on the line next to the memo portion. Sasenakiene Balasar testified that he never saw or received this check, which was delivered to his wife, defendant’s niece, and deposited by her in the corporate bank account of plaintiff; that he never agreed or accepted this in full payment.
The court accepted his trial testimony that he had not ever seen or physically received the check. Given the expenses testified to, labor and materials being in excess of the $11,000 claimed by defendant to satisfy the work, labor and services performed, the amount alleged to be in excess of $19,000, substantiated by numerous bills and testimony as to costs of labor, it is unlikely that plaintiff’s president would accept such amount in satisfaction.
The court also found that there was extra or additional work done at the premises in addition to the work contracted for, as well as changes in installation work performed at defendant’s direction or request, not attributable to any fault or neglect of plaintiff and that defendant was in fact entitled to certain credits and offsets taken in consideration in the amount found due.
Finally, the court found defendant’s claims of defective work were disingenuous, conclusory and unsubstantiated by any evidence or timely complaints, and that some of the alleged complaints were in years far removed from completion of work, without competent proof that they were attributable to defective work.
Except as previously initially above indicated, this motion is denied.