OPINION OF THE COURT
 

 Kaye, J.
 

 These appeals raise two administrative law questions: the validity of a regulation of the State Liquor Authority (the SLA), and the propriety of an SLA Commissioner’s participation in final agency decisions against petitioner licensees. As to both questions we agree with the licensees: the regulation is invalid as applied because it conflicts with the authorizing legislation, and the Commissioner (who was SLA Counsel when the charges against the licensees were filed and heard)
 
 *272
 
 should have recused herself from the final agency determinations.
 

 I.
 

 Beer Garden, Inc.
 

 In 1986, the SLA issued petitioner Beer Garden, Inc., a New York City nightclub, a license for the on-premises sale of alcoholic beverages. Three SLA notices are the focus of Beer Garden’s appeal.
 
 First,
 
 in December 1988, a proceeding to cancel or revoke Beer Garden’s license was initiated by a Notice of Pleading and Hearing charging that the "occurrence of noise, disturbance, misconduct or disorder in the licensed premises, in areas in front of or adjacent to the licensed premises, or in the parking lot of the licensed premises has resulted in the licensed premises becoming a focal point for police attention; all cause for revocation, cancellation or suspension of the license in accordance with rule 36.1 (q) of the Rules of the State Liquor Authority.”
 

 Second,
 
 in March 1989, the SLA served Beer Garden with notice of a proceeding to suspend its license, charging that the licensee had two months earlier sold alcoholic beverages to a minor in violation of Alcoholic Beverage Control Law § 65 (1). The notice specified a 30-day suspension as the maximum possible penalty.
 
 Third,
 
 a Notice of Interview was served on Beer Garden in October 1989, informing the licensee that based on the same "focal point” allegation made in the first notice, an interview would be scheduled in connection with renewal of its license for 1989-1992.
 

 All three notices were issued over the stamped signature of "Sharon L. Tillman, Counsel to the Authority.” The first two notices advised Beer Garden that failure to appear and plead would be deemed "no contest” of the charges; all three notices stated that Beer Garden could be represented by counsel and, at any hearing or interview, could introduce evidence in its own behalf.
 

 Under SLA regulations, the Administrative Law Judge is authorized to make findings as to whether the evidence sustained the charges, and may also recommend a penalty
 
 (see,
 
 9 NYCRR 54.4 [g]). Between November 1989 and April 1990, the ALJ conducted hearings on the revocation and suspension proceedings, during which he rejected Beer Garden’s challenge to the agency’s authority to promulgate rule 36.1 (q); he concluded that under the rule it was unnecessary for the SLA
 
 *273
 
 to establish that the licensee was aware of the alleged misconduct. In March 1990, the ALJ found the charges sustained factually and, without recommendation as to penalty, he referred the matter to the Commissioners for final determination
 
 (see,
 
 9 NYCRR 54.4 [g]; 54.6).
 

 The renewal interview was held shortly thereafter, on April 19, 1990, and the SLA’s motion to incorporate the prior proceedings granted. The ALJ deferred to the Commissioners as to whether evidence of incidents occurring prior to the expiration of the current license (the same incidents supporting the "focal point” charge in the revocation proceeding) could support a determination not to renew Beer Garden’s license.
 

 On June 30, 1990, Tillman left her position as Counsel to become an SLA Commissioner.
 

 On August 1, 1990, the Commissioners voted to combine the first and second proceedings, adopt the ALJ’s findings, and sustain the charges, imposing a penalty of revocation and $1,000 bond forfeiture. The Commissioners also sustained the ALJ’s findings in the nonrenewal proceeding and directed entry of a nonrenewal order. Three of the five Commissioners, including Commissioner Tillman, concurred in the dispositions; two voted to adjourn the matter for a week.
 

 The matter was reconsidered one week later at the request of Beer Garden’s attorney, who had been unable to attend the earlier session, and at that time he asked that Commissioner Tillman recuse herself based on her role as SLA Counsel during the hearing process. She refused. Upon reconsideration, the three Commissioners adhered to their original determination, and the two who had voted to defer the matter voted to suspend, rather than revoke, Beer Garden’s license. Beer Garden then commenced the present CPLR article 78 proceeding.
 

 Bayside Bowling and Recreation, Inc.
 

 In September 1989, the SLA notified Bayside Bowling and Recreation, Inc. of the commencement of a license revocation proceeding based on a charge that the premises — a Queens discotheque — had become the "focal point” of police activity. The language of the charge was identical to that contained in the notice to Beer Garden. Tillman’s signature, as Counsel to the SLA, was stamped at the foot of the notice, which — as in the case of Beer Garden — advised of the consequences of a
 
 *274
 
 failure to plead, the right to be represented by counsel, and the right to present evidence at a hearing.
 

 After hearings during January and February 1990, the ALJ sustained the charge as to the period from April 6, 1988 through July 20, 1989 based upon approximately 18 incidents "recalled or recorded by police.” In response to Bayside’s contention that the charge could not be sustained without proof of the licensee’s fault — or awareness of the alleged conduct — the ALJ held that rule 36.1 (q) does not require any showing of "suffering or permitting,” and "the absence of such a requirement indicates that the regulation is no-fault in nature.”
 

 A majority of the five SLA Commissioners — including Commissioner Tillman — voted to impose a 10-day license suspension and $1,000 fine. The two remaining members voted to sustain the charge, impose the fine, but defer suspension. Again, in response to a request from the licensee, Tillman refused to recuse herself. Bayside then commenced this article 78 proceeding to annul the SLA’s determination.
 

 Both article 78 proceedings were transferred to the Appellate Division, which held in each case that Commissioner Tillman’s refusal to recuse herself mandated that the petitions be granted. The court concluded that inasmuch "as the very notice of charges brought against petitioner had been signed by Tillman, there was too great a possibility that she may have been predisposed to uphold those charges to permit her, over petitioner’s objection, to subsequently assume an adjudicative role as to the same charges.”
 
 (Matter of Bayside Bowling & Recreation Center v New York State Liq. Auth.,
 
 171 AD2d 576, 576-577.) In that the AU’s factual findings were unaffected by the SLA’s subsequent determinations, the Appellate Division remanded both cases to the agency for reconsideration without the participation of Commissioner Tillman. In neither case did the court reach the validity of rule 36.1 (q).
 

 II.
 

 We first consider petitioners’ argument, raised on their cross appeals, that rule 36.1 (q) was invalid as applied. That argument — if successful — would result in dismissal of all charges but one.
 

 Under rule 36.1 (q), a license may be revoked, canceled or suspended when "any noise, disturbance, misconduct, disorder, act or activity occurs in the licensed premises, or in the area
 
 *275
 
 in front of or adjacent to the licensed premises, or in any parking lot provided by the licensee for use by licensee’s patrons, which * * * results in the licensed premises becoming a focal point for police attention” (9 NYCRR 53.1 [q]).
 
 *
 

 Petitioners challenge the SLA’s authority to promulgate this rule, arguing that the only statutory authority which might support the agency’s authority is Alcoholic Beverage Control Law § 106 (6): no person "licensed to sell alcoholic beverages shall * * * suffer or permit [the licensed] premises to become disorderly.” Petitioners maintain that, as rule 36.1 (q) represents the SLA’s effort to implement the policy embodied in section 106 (6), the rule must incorporate the "suffer or permit,” or awareness, element of the statute. The SLA counters that, under rule 36.1 (q), there need be no demonstration of a licensee’s awareness, and cites as its authority for a no-fault rule Alcoholic Beverage Control Law §§ 2, 17, 114 and 118.
 

 "Before a court can determine whether an agency acted reasonably in taking a particular action it must find that the agency had authority to act in the first instance.”
 
 (Mancini v McLaughlin,
 
 54 NY2d 860, 862.)
 

 Under the Alcoholic Beverage Control Law, the Legislature has granted the SLA specific and particular, rather than general, rule-making authority: "the power to make rules with respect to particular subjects is specifically granted to the SLA throughout the body of the Alcoholic Beverage Control Law.”
 
 (Matter of Rotunno v City of Rochester,
 
 120 AD2d 160, 163,
 
 affd
 
 71 NY2d 995;
 
 see, by contrast,
 
 Banking Law § 14 [1]; Executive Law § 295 [5]; Labor Law § 21 [11]; Social Services Law § 20 [3] [f]; Vehicle and Traffic Law § 215.) We agree with petitioners that the SLA cannot take refuge in general rule-making authority as a means of circumventing the specific legislative requirement in Alcoholic Beverage Control Law § 106 (6) of the licensee’s awareness of the disorderly conduct.
 

 It is clear that section 106’s prohibition on disorderly conduct is the basis for the agency’s rule. On its face, rule 36.1 (q) speaks of "noise, disturbance, misconduct, disorder” as the
 
 *276
 
 culpable conduct that may lead to the licensed premises becoming the "focal point” for police attention (9 NYCRR 53.1 [q];
 
 compare,
 
 Penal Law § 240.20 ["disorderly conduct” defined, including the making of "unreasonable noise”]). In fact, this Court has stated that the "noise generated by a licensed establishment may furnish a basis for suspending an issued license * * * because subdivision 6 of section 106 of the Alcoholic Beverage Control Law mandates that no licensee 'suffer or permit [his] premises to become disorderly’ ”
 
 (Matter of Circus Disco v New York State Liq. Auth.,
 
 51 NY2d 24, 35, citing
 
 Quintard Assocs. v New York State Liq. Auth.,
 
 57 AD2d 462,
 
 mot to dismiss appeal granted
 
 42 NY2d 973,
 
 Iv denied
 
 42 NY2d 805; and 9 NYCRR 53.1 [q]). Indeed, the agency itself appears to have applied the rule consistently with section 106 in past cases, alleging some culpable mental state on the part of the licensee
 
 (see, e.g., Matter of Kelly v Duffy,
 
 144 AD2d 792;
 
 Matter of Desiderio’s Parklane Pizzeria v Duffy,
 
 143 AD2d 508;
 
 Matter of Jimmy Daze Inn v New York State Liq. Auth.,
 
 116 AD2d 579;
 
 Matter of 8 Christopher St. Corp. v McLaughlin,
 
 88 AD2d 515).
 

 By contrast, the sections relied on by the SLA do not support a no-fault rule for disorderly conduct. Alcoholic Beverage Control Law § 2 is no more than a general statement of purpose and policy; the remaining three sections cited by the SLA relate to "for cause” revocation of licenses. The first grants the SLA the authority to "revoke, cancel or suspend for cause any license or permit” (Alcoholic Beverage Control Law § 17 [3]); the second requires the SLA to prepare and furnish to each licensee a statement of the causes for which a license may be revoked (Alcoholic Beverage Control Law § 114 [5]); and the last section again states that licenses may be revoked, canceled or suspended for cause, listing two infractions that mandate revocation (Alcoholic Beverage Control Law § 118).
 

 It is of course a fundamental principle of administrative law that agencies are possessed of only those powers expressly delegated by the Legislature, together with those powers required by necessary implication
 
 (see, Suffolk County Bldrs. Assn. v County of Suffolk,
 
 46 NY2d 613). Even when broad rule-making authority has been granted, an agency cannot "promulgate rules in contravention of the will of the Legislature.”
 
 (Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.,
 
 45 NY2d 471, 480;
 
 see also, Matter of L. Newstand, Inc. v State Liq. Auth.,
 
 151 AD2d 483, 484,
 
 lv denied
 
 75 NY2d 710.) Whatever power the SLA may have to
 
 *277
 
 delineate "for cause” grounds for revocation not specified in the statute
 
 (see, e.g., Matter of Glenram Wine & Liq. Corp. v O’Connell,
 
 295 NY 336, 342;
 
 Matter of Lehama Rest. v O’Connell,
 
 280 App Div 796), that general authority cannot override the specific legislative mandate of an awareness element in section 106 governing disorderly conduct.
 

 Since the SLA’s application of rule 36.1 (q) in the present cases is in direct conflict with the plain language of section 106 (6) of the Alcoholic Beverage Control Law, the charges alleging that the licensed premises have become the focal point of police attention must be dismissed.
 

 In the case of Bayside, this ends the matter, as the only charge proffered against the licensee was that the premises had become the focal point of police attention. Indeed, Bay-side’s experience reflects how far the SLA’s application of its regulation has strayed from Alcoholic Beverage Control Law § 106 (6). Of the 18 or so incidents upon which the ALJ relied in sustaining the charge, approximately 12 were station house reports or complaints, with no officers dispatched to the licensed premises. There is thus no evidence that the licensee was made aware of any of these reports.
 

 In the case of Beer Garden, two additional matters remain for consideration.
 

 First,
 
 after the ALJ concluded that rule 36.1 (q) was "no fault” in nature and sustained the charges on that basis, he added that this licensee obviously was aware of what was going on. The ALJ’s added remark cannot eradicate the error of law that infected his findings. In light of his ruling that strict liability was the governing legal standard, it is moreover impossible to determine what degree of "awareness” he had in mind by the later statement. For this reason, the ALJ’s findings on the "focal point” charge, which were dispositive of the revocation and nonrenewal proceedings, must be dismissed.
 

 Second,
 
 Beer Garden was also charged with sale to a minor in violation of Alcoholic Beverage Control Law § 65 (1) — a matter not determined by rule 36.1 (q). Given the consolidation of charges before the SLA, this surviving charge must now be remitted to the agency, requiring us to consider whether Commissioner Tillman may participate in the further proceedings. We conclude that she may not.
 

 Commissioner Tillman was the attorney for the SLA during the entire period the matter against Beer Garden was pending
 
 *278
 
 before the ALJ, and the charges bore her signature. The challenge here is not to the dual investigatory/adjudicatory role of the agency. Rather it concerns an individual’s participation, as advocate for the agency’s position, in the very matter over which she is later required to pass impartial judgment
 
 (compare, Withrow v Larkin,
 
 421 US 35).
 

 Judiciary Law § 14 provides that no Judge shall "sit as such in, or take any part in the decision of, an action, claim, matter, motion or proceeding to which he [or she] is a party, or in which he [or she] has been attorney or counsel.” While we recognize that this provision pertains only to courts of record, the common-law rule of disqualification embodied by the statute has been applied to administrative tribunals exercising quasi-judicial functions
 
 (see, e.g., Matter of City of Rochester,
 
 208 NY 188, 192,
 
 rearg denied
 
 209 NY 529;
 
 Matter of Washington County Cease v Persico,
 
 120 Misc 2d 207, 228-229,
 
 affd
 
 99 AD2d 321,
 
 affd on other grounds
 
 64 NY2d 923).
 

 The SLA urges that Tillman did not actively participate in the hearing before the AU and had no actual knowledge of the facts of the present case. Mere "appearance of impropriety,” the SLA maintains, will not suffice to mandate recusal where no actual bias is shown, citing this Court’s recent decision in
 
 Matter of 1616 Second Ave. Rest. v New York State Liq. Auth. (75
 
 NY2d 158).
 

 In the present circumstances, we disagree. In
 
 1616 Second Avenue,
 
 the Court was concerned with whether public statements made by the Chairman of the SLA relating to charges then pending in an SLA proceeding against a licensee disqualified the Chairman from participating in the administrative review of that proceeding (75 NY2d, at 160,
 
 supra).
 
 Those circumstances necessarily required the Court to examine the statements and determine whether the comments gave the impression that the Chairman had prejudged the facts. The present case involves a different concern for propriety: whether one who has appeared, even if it be in form only, as counsel in the prosecution of legal charges can later adjudicate that very dispute.
 

 " 'Next in importance to the duty of rendering a righteous judgment, is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge.’ So vital is deemed the observance of this principle that it has been held that a judge disqualified under a statute cannot act even with the consent of the parties interested, because the law was not designed merely for the protection of the parties to the suit,
 
 *279
 
 but for the general interests of justice.”
 
 (Matter of City of Rochester, supra,
 
 at 192, quoting
 
 People ex rel. Roe & Roe v Suffolk Common Pleas,
 
 18 Wend 550, 552;
 
 see also, Matter of Pelaez v Waterfront Commn.,
 
 88 AD2d 443, 447-448.)
 

 Courts of this State, while finding no actual fault in the conduct of the hearing, have held "as a matter of propriety” that administrative officers should recuse themselves in situations where prior involvement creates an appearance of partiality
 
 (see, e.g., Matter of O’Reilly v Pisani,
 
 79 AD2d 973, 974;
 
 Matter of Aiello v Tempera,
 
 65 AD2d 791;
 
 Matter of Waters v McGinnis,
 
 29 AD2d 969). Fundamental fairness requires "at least that one who participates in a case on behalf of any party, whether actively or merely formally by being on pleadings or briefs, take no part in the decision of that case by any tribunal on which [that person] may thereafter sit.”
 
 (Trans World Airlines v Civil Aeronautics Bd.,
 
 254 F2d 90, 91 [DC Cir];
 
 see also, Matter of Bigelow v Board of Trustees,
 
 63 NY2d 470, 474.)
 

 Tillman’s role as Beer Garden’s "prosecutor” in this case was inherently incompatible with her subsequent participation as its Judge
 
 (see, Sharkey v Thurston,
 
 268 NY 123, 126). That circumstance and fundamental fairness require that she recuse herself from any reconsideration of the surviving charge.
 

 Accordingly, in
 
 Beer Garden,
 
 the order of the Appellate Division should be modified, with costs to petitioner, by remitting the matter to Supreme Court with directions to remand to the State Liquor Authority for further proceedings in accordance with this opinion. As to
 
 Bayside,
 
 the order of the Appellate Division should be modified, with costs to petitioner, by granting the petition and dismissing the charges.
 

 Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur; Chief Judge Wachtler taking no part.
 

 In
 
 Matter of Beer Garden v New York State Liq. Auth.:
 
 Order modified, with costs to petitioner, by remitting the matter to Supreme Court, New York County, with directions to remand to the State Liquor Authority for further proceed
 
 *280
 
 ings in accordance with the opinion herein and, as so modified, affirmed.
 

 In
 
 Matter of Bayside Bowling & Recreation Center v New York State Liq. Auth.:
 
 Order modified, with costs to petitioner, in accordance with the opinion herein and, as so modified, affirmed.
 

 *
 

 The rule also provides that a license may be revoked when such noise or disturbance "adversely affects or tends to affect the protection, health, welfare, safety or repose of the inhabitants of the area in which the licensed premises are located * * * or is offensive to public decency.” Petitioners were not charged with violating these provisions of the rule and thus their validity is not in issue on this appeal.