OPINION OF THE COURT
Richard B. Lowe III, J.
Plaintiff, Jay-Jay Cabaret, Inc., moves for an order, pursuant to CPLR 3025 (b), granting leave to amend its complaint. Defendants, the State of New York, Thomas A. Duffy, Jr., as Chairman of the New York State Liquor Authority, and the New York State Liquor Authority (referred to collectively as the SLA), seek denial of the motion-in-chief and cross-move for an order, pursuant to CPLR 3212, granting summary judgment; or, in the alternative, pursuant to CPLR 3101, granting a protective order against pretrial discovery sought by plaintiff.
This is an action by plaintiff, the operator of a cabaret known as "Flashdancers” (the club) located at 1674 Broadway, New York, New York, for a declaratory judgment as to the validity of the SLA’s rules governing "table dancing”, its six-foot rule[1] and whether female dancers whose upper torsos are *675 covered by a "liquid applied latex bra”[2] violates SLA rule 36.1 (s).
In its original complaint, plaintiff sought a declaratory judgment declaring Alcoholic Beverage Control Law § 106 (6)[3] unconstitutional on its face and/or as applied to plaintiff; declaring SLA rule 36.1 unconstitutional on its face and/or as applied to plaintiff; in the alternative, declaring that "table dancing” does not constitute a "disorderly” condition on the licensed premises for purposes of Alcoholic Beverage Control Law § 106 (6); and that "liquid latex bras,” as used at plaintiff’s premises, does not violate SLA rule 36.1 (s); and permanently enjoining defendants from enforcing Alcoholic Beverage Control Law § 106 (6) and/or SLA rule 36.1 (s); or, in the alternative, from enforcing said statute and rule on the basis of "table dancing” by performers wearing "liquid applied latex bras” within six feet of patrons. In its proposed amended and supplemental complaint, plaintiff repeats and reiterates the allegations of the original complaint, but seeks to add two *676 additional theories of recovery based upon the same facts: that rule 36.1 (s) was promulgated by the SLA without power or in excess of its authorized powers; and that rule 36.1 (s) violates article III, § 1 of the New York Constitution and the separation of powers doctrine.
CPLR 3025 (b) provides that leave to amend pleadings shall be freely granted absent a showing of prejudice (Fahey v County of Ontario, 44 NY2d 934, 935). The merits of a proposed amendment will not be examined on the motion for leave to amend — unless the insufficiency of lack of merit is clear and free from doubt (Norman v Ferrara, 107 AD2d 739). Only where the proposed amendment is palpably insufficient as a matter of law or is totally devoid of merit should leave to amend be denied (supra; East Asiatic Co. v Corash, 34 AD2d 432).
In the case at bar, defendants have failed to demonstrate that the proposed amended and supplemental complaint is palpably insufficient as a matter of law or is totally devoid of merit. Nor have they demonstrated any prejudice to them arising from the proposed amendment. The amended and supplemental complaint merely sets forth additional theories of recovery based upon the same set of facts as originally pleaded (Trusthouse Forte [Garden City] Mgt. v Garden City Hotel, 106 AD2d 271, 272). Accordingly, the motion-in-chief seeking leave to serve an amended and supplemental complaint is granted. The amended and supplemental complaint in the proposed form annexed to the moving papers shall be deemed served nunc pro tunc upon service of a copy of this order with notice of entry.
The court will next address the merits of defendants’ cross motion for summary judgment.
The purpose of an action for a declaratory judgment is to serve some practical purpose, and in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations (James v Alderton Dock Yards, 256 NY 298, 305). An action for a declaratory judgment is not subject to dismissal merely because the plaintiff is not entitled to the declaration which it seeks (Lanza v Wagner, 11 NY2d 317, 334, appeal dismissed 371 US 74, cert denied 371 US 901). In such a case, rather than dismiss the complaint, the court should make an appropriate declaration of the rights and obligations of the parties with respect to the subject matter of the litigation (Sweeney v Cannon, 30 NY2d 633). Accordingly, *677 to the extent that defendants seek dismissal of the complaint, the cross motion is denied.
"Topless” dancing is a constitutionally protected form of expression (Doran v Salem Inn, 422 US 922) and is not per se lewd or indecent. (Matter of Beal Props. v State Liq. Auth., 37 NY2d 861, 862.) New York courts have ruled, as a matter of New York State constitutional law, that neither the Legislature nor the SLA may "categorically” ban "topless” dancing in the absence of evidence that such a ban is "sufficiently functionally related to the exercise of the State’s police power” so as to overcome the State constitutional guarantee of freedom of expression. (Bellanca v New York State Liq. Auth., 54 NY2d 228, 236 [Bellanca II]; 92-07 Rest, v New York State Liq. Auth., 80 AD2d 603.) In the case at bar, defendants have failed to meet the "functional relationship” test.
The Court of Appeals explained its decision in Beal Props, (supra) in the later case of Bellanca II (supra) as follows:
"In Matter of Beal Props, v State Liq. Auth. (37 NY2d 861, 862) we held that the State Liquor Authority did not have authority to impose a sanction against nude dancing 'absent a regulation by the agency giving notice that conduct not lewd or indecent per se was proscribed’. That decision may not properly be read as implying that just any regulation, regardless of its constitutional validity, would serve to confer such authority. What the agency adopted following our decision in that case was the presently unchallenged 6-foot 18-inch regulation referred to (supra, at p 232).
"We do not now undertake to define the standard to be applied under our State Constitution to determine whether a particular regulation of speech or conduct in connection with the sale or consumption of alcoholic beverages violates the guarantee of freedom of expression declared in section 8 of article I. It would seem that the test would be higher than that of mere rational relationship, the standard required for the justification of any exercise of the police power quite independent of the provision of section 8 of article I. Presumably, too, the standard would be significantly different depending on the nature of the speech or conduct to be regulated, e.g., as between topless dancing, on the one hand, and political activity, on the other, assuming indeed that the latter would be subject to any such regulation.” (Bellanca II, 54 NY2d, at 236, n 8, supra [emphasis added].)
In the most recent seminal administrative law case on the *678 subject (decided after the commencement of this action), Matter of Beer Garden v New York State Liq. Auth. (79 NY2d 266), the Court of Appeals struck down SLA rule 36.1 (q) on the ground that the SLA acted without statutory authority in promulgating said rule and because it was a "no-fault” rule (i.e., that a violation could be established even absent proof of the licensee’s awareness of the alleged "disorderly” conduct in or about the licensed premises). As the Court of Appeals held in the Beer Garden case:
" 'Before a court can determine whether an agency acted reasonably in taking a particular action it must find that the agency had authority to act in the first instance.’ (Mancini v McLaughlin, 54 NY2d 860, 862.)
"Under the Alcoholic Beverage Control Law, the Legislature has granted the SLA specific and particular, rather than general, rule-making authority: 'the power to make rules with respect to particular subjects is specifically granted to the SLA throughout the body of the Alcoholic Beverage Control Law * * * We agree with petitioners that the SLA cannot take refuge in general rule-making authority as a means of circumventing the specific legislative requirement in Alcoholic Beverage Control Law § 106 (6) of the licensee’s awareness of the disorderly conduct.” (79 NY2d, at 275 [emphasis added] [citations omitted].)
Similarly, in the case at bar, plaintiff argues that there is no "specific particular” statutory basis for rule 36.1 (s). Plaintiff has gone to exquisite lengths to trace the history of the rule. Plaintiff asserts that "[t]he New York State Legislature has never authorized the SLA to promulgate a categorical, 'no fault’ proximity rule (in effect 'banning’ topless dancing within 6 feet of patrons regardless how 'orderly’ the licensed premises may otherwise be). Nor has the SLA ever asserted that rule 36.1 (s) was based upon any statutory authority other than 'ABC Law §§ 2, 17, 114 and 118’ ”. (Rudofsky reply affirmation ¶ 22.)
Although it is unfair to place the burden of proving a negative on a party (see, People v Rosa, 65 NY2d 380, 386; 29 Am Jur 2d, Evidence, § 153), plaintiff has made a sufficient showing, based upon official records maintained and produced by the SLA pursuant to disclosure demands and subpoena served in connection with the administrative hearings and/or the Freedom of Information Law (FOIL), and by review of the Governor’s Bill Jacket for Alcoholic Beverage Control Law *679 § 106 (6-a) (L 1977, eh 321), to prove the nonexistence of appropriate statutory authority for the six-foot rule in issue. Plaintiff’s counsel cites a memorandum dated November 26, 1975, then SLA Chairman Michael Roth proposed amending rule 36.1 by adding new subdivisions (r) and (s). In pertinent part, the memorandum reads as follows:
"Rule [36.1] (s) would prohibit any female from appearing topless, except that an entertainer on a stage removed from patrons could appear topless while performing. In effect, this would permit topless dancing, while barring topless barmaids or waitresses.
"Extensive consideration has been given to the question of barring topless dancing itself. Some persons find topless dancing immoral and offensive, and believe it leads to a climate in which alcoholic beverages ought not be sold. Others feel that topless dancing, in and of itself, offends relatively few people, given the prevailing moral and social climate, and is a rather harmless form of entertainment.
"In light of the Salem Inn opinion, I believe we would be precluded from banning topless dancing unless hearings were held or a record made establishing a clear and direct relationship between such entertainment and Bacchanalian revelries and other sordid behavior.” (As quoted in Rudofsky reply affirmation 24 [emphasis added].)
Plaintiff’s counsel further notes that Chairman Roth’s memorandum refers to a proposed "Statement of Findings and Policy, in the form attached.” However, there is no "attached” Statement of Findings and Policy. Moreover, other documents also refer to this "Statement of Findings and Policy” which has never been produced by the SLA in response to any demand by plaintiff and which is notably omitted from the Governor’s Bill Jacket for Alcoholic Beverage Control Law § 106 (6-a), even though another document in the Bill Jacket also refers to this alleged "Statement of Findings and Policy.” (Id., U 25.)
Plaintiff’s counsel has also submitted the affidavit of SLA Secretary Barbara Lord, served pursuant to the order of Justice Danzig, that "no public hearings were held with regard to these amendments. ” (Id., ¶ 26 [emphasis added].)
Thus, based, in part, upon defendant’s own records, plaintiff has shown the absence of the requisite statutory authority for the SLA’s promulgation of rule 36.1 (s). Furthermore, official correspondence from SLA to the Speaker of the Assembly and *680 Temporary President of the Senate "pursuant to Section 101-a of the Executive Law”, again citing "Sections 2, 17, 114 and 118 of the Alcoholic Beverage Control Law” as "statutory authority” for the six-foot rule, and reciting that "fn]o public hearings have been held or scheduled” (emphasis added).
Other documentary evidence of likeness has been submitted by plaintiff and is not refuted by defendant. Thus, there is a complete, total absence of any findings by the SLA to support such a blanket proximity probation as the six-foot rule. (See, Bellanca II, 54 NY2d, at 232, supra.) Indeed, as plaintiff’s counsel observes, under the SLA’s interpretation, "the Six Foot Rule would be violated prima facie by a motionless topless dancer standing within 6 feet of a blind patron”. (Rudofsky reply affirmation ¶ 17 [emphasis added].)
It has long been a cardinal tenet of our jurisprudence that questions should not be reached unless there is a need for their determination to resolve the issues at hand and the question is squarely presented. (Matter of Dora P., 68 AD2d 719, 729, citing Comisky v Arlen, 43 NY2d 696; Anti-Fascist Comm. v McGrath, 341 US 123.) Here, although plaintiff has squarely raised the constitutional issue of whether the SLA’s six-foot rule violates the freedom of expression of dancers employed by plaintiff,[4] it is unnecessary for this court to reach the merits of this constitutional claim. (Bellanca II, 54 NY2d, at 236, n 8, supra.) This court holds that the SLA was without authority to promulgate its six-foot rule, and, thereupon, it is declared null and void. This is without prejudice to repromulgation of said rule upon a showing of the requisite grant of appropriate statutory authority and compliance with the relevant statutory provision.
To the extent that plaintiff seeks a declaratory judgment that its use of liquid applied latex bras does not render the premises "disorderly” the complaint is dismissed without prejudice as premature. Plaintiff asserted that its use of liquid applied latex bras covers the areola of its dancers’ breasts and *681 is opaque so as to eliminate any simulation. Since plaintiff specifically denies that its activity is within the proscribed parameters of the rule, a declaratory judgment does not lie. (See, Plaza Health Clubs v City of New York, 76 AD2d 509, 513, appeal dismissed 51 NY2d 1008.) Although plaintiff may theoretically be subject to prosecution for promoting exposure of a person (Penal Law § 245.02), and, therefore, it would have the requisite standing to bring a declaratory judgment action challenging the constitutionality of the statutory provision even though it has not been charged with or found guilty of violating the provision (Annbros Corp. v City of New York, 83 AD2d 860), here, plaintiff is not challenging the Penal Law itself, but whether the manner in which it conducts its business renders the premises "disorderly” within the purview of the SLA’s rules. Where a constitutional claim hinges upon factual issues (for example, whether the liquid applied latex bras cover the areola of the dancers’ breasts or simulate it) is renewable at the administrative level, that claim must first be addressed to the agency so that a necessary factual record can be established (see, Matter of Levine v Board of Educ., 173 AD2d 619, 621; Matter of Perrotta v City of New York, 107 AD2d 320, 324, affd 66 NY2d 859). Therefore, plaintiff must first exhaust its administrative remedies. (Dur-Bar Realty Co. v City of Utica, 57 AD2d 51, 58, affd 44 NY2d 1002.)
To recapitulate: plaintiff’s motion-in-chief for leave to serve an amended and supplemental complaint is granted; the amended and supplemental complaint in the proposed form annexed to the moving papers is deemed served nunc pro tunc; plaintiff’s cross motion for summary judgment is granted to the extent of declaring the SLA’s six-foot rule (rule 36.1 [s]) null and void, for want of statutory authority to promulgate it. The SLA is enjoined from enforcing rule 36.1 (s). In all other respects, defendants’ cross motion for summary judgment is granted and the remainder of the complaint is dismissed. In view of this holding defendants’ alternative request for a protective order vacating plaintiff’s discovery demands is denied as moot.

. The "six-foot” rule (rule 36.1 [s]; 9 NYCRR 53.1 [s]), a "proximity rule”, subjects holders of alcoholic beverage licenses — such as plaintiff — to possible sanctions, including suspension and/or revocation of such licenses, if they "suffer or permit” (i.e., allow) "any female to appear on [the] licensed premises in such a manner or attire as to expose to view any portion of the breast below the top of the areola, or any simulation thereof’, except "female entertainerfs] performing on a stage or platform which is at least 18 inches above the immediate floor level and which is removed at least six feet from the nearest patron.”

. Plaintiff has submitted affidavits by dancers, employees, cosmetologists, theatrical makeup manufacturers and makeup artists describing in detail what "liquid applied latex bra” is and how it is used by the club. The liquid latex consists of natural latex, water, ammonia, tetramethyl, thiuram disulfate and zinc oxide (Brumbergh affidavit ¶ 116). A solution of vitamin E is applied to the entire breast area of the dancers. It remains on the surface and allows for the adherence of a layer of water base foundation makeup, which is then applied. The water base foundation makeup varies in pigment, and the foundation color is closely matched by a cosmetologist to the skin tones of the dancers. After the foundation makeup dries, a first layer of opaque liquid latex is applied by makeup artist brush and allowed to dry. After that, a second layer is applied in the same manner and allowed to dry. Thereafter, there is a puff application of translucent powder, which adheres to the liquid latex, which when dry, has a viscosity upon which the powder sticks and remains (Capril affidavit ¶ 3). The zinc oxide is the densest form of white cosmetic pigment manufactured, and causes the liquid latex to be opaque (Brumbergh affidavit ¶ 19). Consequently, no portion of the breast below the top of the areola is exposed (id., ¶ 20). According to plaintiff’s experts and lay witnesses, the liquid latex does not create a simulation of a female’s breast or breasts. The female dancers have also submitted affidavits stating that the liquid latex bra is opaque and covers the areola, nipple and lower portion of each breast, and, not only is the liquid latex bra opaque, but it is clearly defined to eliminate any simulation (of a breast). The dancers also state that the liquid latex bra permits them to have freedom of movement, while providing an opaque covering of their breasts below the top of the areola. Defendants have not submitted any evidence or affidavits by anyone with personal knowledge of the facts to refute or even to dispute or raise a triable issue of fact as to what constitutes a liquid latex bra and how it is used by dancers at the club.

. The statute provides as follows: "No person licensed to sell alcoholic beverages shall suffer or permit such premises to become disorderly.”

. Although not raised by defendants, there is some question as to whether plaintiff, a corporate employer, has standing in this declaratory judgment action to assert the constitutional claim of freedom of expression on behalf of dancers employed by it, none of whom are named parties, or have been charged with exposure of a person (Penal Law § 245.01), offensive exhibition (Penal Law § 245.05), or other offenses against public sensibilities (see, 2 Goodman & Leventhal, Charges to the Jury and Requests to Charge in a Criminal Case § 51.01 et seq.) or disorderly conduct (Penal Law § 240.20).