[880 NYS2d 22]

In the Matter of 47 Ave. B. East Inc., Petitioner, v New York State Liquor Authority, Respondent.

First Department, May 21, 2009

34

## APPEARANCES OF COUNSEL

*Mehler & Buscemi*, New York City (*Martin P. Mehler* of counsel), for petitioner.

*Thomas J. Donohue*, New York City (*Scott A. Weiner* of counsel), for respondent.

## OPINION OF THE COURT

CATTERSON, J.

The principal issue presented on this appeal is whether there is substantial evidence to support the finding that the petitioner permitted overcrowding on the premises in violation of Rules of

the State Liquor Authority rules 54.2 (9 NYCRR 48.2) (hereinafter referred to as rule 48.2) (failure to exercise adequate supervision over the conduct of the licensed establishment) and 54.3 (9 NYCRR 48.3) (hereinafter referred to as rule 48.3) (failure to conform with all occupancy level regulations). Furthermore, this appeal necessarily brings up for review the issue of whether the respondent, the New York State Liquor Authority (hereinafter referred to as the SLA), exceeded its authority in promulgating rules in excess of the power delegated to it by explicit state law.

We find that testimony that patrons were standing "shoulder to shoulder," the only evidence proffered by the SLA that the premises were overcrowded, is insufficient to support the findings that the petitioner violated rules 48.2 and 48.3. Furthermore, we find that the SLA exceeded its authority in determining that the petitioner was guilty of violating the occupancy law where the underlying charges were dismissed in Criminal Court. Moreover, we find that rules 48.2 and 48.3 are ultra vires as applied here because the enforcement of the rules is contrary to the legislative requirements contained in their statutory predicate (Alcoholic Beverage Control Law § 106 [6]).

On January 13, 2007, as a result of a joint task force investigation of various premises in downtown Manhattan, several New York City police officers and SLA investigators descended on the petitioner's premises, a large restaurant/bar located in the area commonly known as Alphabet City.[1] Five charges were brought against the petitioner by the SLA: (1) Allowing the premises to become disorderly in violation of section 106 (6) of the Alcoholic Beverage Control Law; (2) Failure to exercise adequate supervision over the premises on January 13, 2007 in violation of rule 48.2; (3) Failure to comply with occupancy level regulations on January 13, 2007 in violation of rule 48.3 and Rules of the SLA rule 36.1 (f) (9 NYCRR 53.1 [f]) (hereinafter referred to as rule 53.1 [f]); (4) Failure to conform with governmental regulations regarding employment of security guards on January 13, 2007 also in violation of rules 48.3 and 53.1 (f); (5) Failure to conform with building codes and/or other regulations on January 13, 2007 in violation of rules 48.3 and 53.1 (f). According to the SLA, all five charges were cause for revocation, cancellation or suspension of the petitioner's liquor license in accordance with rule 53.1 (f).

---

1. The name Alphabet City comes from Avenues A, B, C and D, the only avenues in Manhattan to have single-letter names.

On October 30, 2007, a hearing was held before an Administrative Law Judge. At the hearing, a senior SLA investigator testified that on January 13, 2007, he went to the petitioner's premises as part of a joint inspection with the New York City Police Department. The investigator stated that he entered through the cellar entrance with two other investigators and observed people standing "pretty much shoulder to shoulder." He further testified that he pushed his way through the crowd and walked up to the first floor with the two other investigators. At that point, he met several other investigators and police officers who had entered the restaurant on that level. The group exited through a service corridor because it was too crowded on the first floor to "plow [their] way to the back in the front."

While the SLA investigator was outside, he observed a police lieutenant talking with the owner of the petitioner, who had produced the certificate of occupancy for the premises allowing for 61 people in the cellar and 135 on the first floor. The investigator stated that he heard the lieutenant tell the owner that the premises were overcrowded and instructed him to get the place under legal capacity. The investigator testified that he observed what he estimated to be between 75 and 100 people in the cellar. He could not say how many people were on the first floor of the premises. On cross-examination, the investigator conceded that he did not use a counting device to determine the number of people at the premises nor did he conduct any headcount while inside the premises. He also conceded that it was not unlawful for people to be standing "shoulder to shoulder."

The SLA introduced into evidence its investigator's report, which noted, inter alia, that the petitioner was issued a summons for overcrowding (Administrative Code of City of NY § 15-227 [a]) and for hiring an unregistered security guard (*see* General Business Law § 89-g [1] [a]). The security guard was also issued a summons for not being able to produce a New York Department of State registration card upon request. (*Id.*)

The owner testified without contradiction that the summonses issued that night were later dismissed and that he fully cooperated with the police in getting the place under legal capacity. The owner also testified that there was no overcrowding and that one of his employees had a counter showing that the premises were within the legal limits. He stated that after the police told him to reduce the number of people inside the premises he complied immediately.

Following the hearing, the Administrative Law Judge dismissed the charges that the petitioner failed to conform with

governmental regulations regarding employment of security guards. She also found that there was "no evidence" that the licensee "suffer[ed] or permit[ted]" the premises to become disorderly in violation of section 106 (6) of the Alcoholic Beverage Control Law. However, the ALJ determined that the licensee failed to exercise adequate supervision over the premises in violation of rule 48.2 and failed to comply with occupancy levels in violation of rule 48.3. She stated that it was "clear from the substantial evidence presented that the premises were in fact overcrowded . . . and that the premises were allowed to become disorderly." The ALJ dismissed the charge that the petitioner failed to "conform with all building codes, and/or fire, health, safety and governmental regulations" because it was duplicative of the charge that the petitioner failed to "conform with all applicable building codes and/or fire regulations regarding occupancy level[s]."

On March 20, 2008, the SLA sustained the findings of the ALJ and, referencing the petitioner's extensive adverse history, cancelled its on-premises liquor license.[2]

The petitioner then commenced this CPLR article 78 proceeding against the SLA alleging that the cancellation of its liquor license was arbitrary, capricious, contrary to law and an abuse of discretion. In addition to arguing that the determination was not supported by substantial evidence and that the penalty was excessive, the petitioner contends that the promulgation of rules 48.2 and 48.3 is ultra vires and has no basis in the Alcoholic Beverage Control Law. Specifically, the petitioner contends that both rules fail to meet the legislative requirements contained in their statutory predicate, Alcoholic Beverage Control Law § 106 (6).

As a threshold matter, we perceive it to be an inherent contradiction to dismiss a charge that a licensee has "suffer[ed] or permit[ted]" the premises to become "disorderly" in violation of section 106 (6) of the Alcoholic Beverage Control Law while at the same time to find substantial evidence that the premises was "in fact overcrowded . . . and . . . allowed to become disorderly" under an SLA rule. Even if we were to accept, as the SLA urges, that overcrowding constitutes disorderly conduct per se, we disagree that there was sufficient evidence that there was overcrowding in the subject premises. Therefore, for the

---

**2.** The word "cancellation" as applied to the termination and surrender of a liquor license is merely a form of revocation. (*Matter of Glenram Wine & Liq. Corp. v O'Connell*, 295 NY 336 [1946].)

reasons set forth below, we find that neither the violation of rule 48.2 nor rule 48.3 can be sustained.

"Judicial review of the determination made by an administrative agency . . . is limited to a consideration of whether that resolution was supported by substantial evidence upon the whole record." (*See 300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 181 [1978].) Substantial evidence "is less than a preponderance of the evidence" and requires only that there be enough "relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact." (*300 Gramatan Ave. Assoc.*, 45 NY2d at 180.) The test "relates to whether a particular action should have been taken or is justified . . . and whether the administrative action is without foundation in fact." (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974] [internal quotation marks and citation omitted].)

█ It is beyond dispute that the credibility determinations of the Administrative Law Judge are entitled to great weight. (*See Matter of Albany Manor Inc. v New York State Liq. Auth.*, 57 AD3d 142, 144 [1st Dept 2008].) Indeed, for purposes of this appeal we accept as *true* all of SLA's allegations concerning the investigator's observations of conditions on the premises on the night of January 13, 2007. It is uncontroverted, however, that the investigator did not perform a headcount in the basement and merely observed that the patrons were standing "shoulder to shoulder." Nor did the investigator conduct a headcount on the main floor where he only spent a brief time observing the scene.

As for the SLA investigator's testimony that there were between 75 and 100 persons in the basement, we reject that as a "guesstimate" that cannot constitute substantial evidence. No matter how much lower the standard, substantial evidence of a violation of occupancy limits cannot be based on testimony that cavalierly assesses groups of people on a "give or take" of 25 persons, which is a 33.3% margin of error. Indeed, were we to apply the 33.3% margin of error to the guess of 75 persons, it is doubtful how anyone could ascribe overcrowding to a premises with a legal maximum occupancy of 61 persons.

We disagree with the dissent's finding of substantial evidence of overcrowding in the summons that stated there were "approximately 300 patrons." It is beyond dispute that an unsigned, unverified and unsworn statement scribbled on a summons that

was eventually dismissed is worthless as evidence of any kind. Moreover, the investigator's testimony is directly controverted by that of the owner who stated that his employee had used a counting device to ensure that the restaurant was within the legal occupancy limit and that there was no overcrowding on the night in question. It does not warrant further conjecture as to the consequences of finding every bar/restaurant in Manhattan to be in violation of the Alcoholic Beverage Control Law based solely upon evidence that patrons were standing "shoulder to shoulder."

Accordingly, because there is inadequate evidence that the petitioner permitted the premises to become overcrowded, the underlying basis for both violations, we conclude that neither charge can be sustained.

■ Furthermore, we find that the SLA exceeded its authority in determining that the petitioner violated the occupancy law. The SLA based its cancellation of the petitioner's license on rule 53.1 (f), which states: "Any license or permit issued pursuant to the Alcoholic Beverage Control Law may be revoked, cancelled or suspended for . . . [f]ailure or refusal of the licensee or permittee to comply with any provision of the Alcoholic Beverage Control Law or any rule or regulation of the [SLA]."

The SLA argues that the petitioner violated rules 48.2 and 48.3 and thus, cancellation is permissible pursuant to rule 53.1 (f). Rule 48.3 states that "[t]he [SLA] expects all on-premises licensees, regardless of type of premises, to conform with all applicable building codes, fire, health, safety and governmental regulations." Pointing to the summons issued on January 13, 2007 for an alleged violation of Administrative Code § 15-227 (a),[3] the SLA found that the petitioner failed to conform with the occupancy law and thus violated rule 48.3. Because the record is clear that the summons for violating Administrative Code § 15-227 (a) was dismissed in Criminal Court we cannot possibly find that there was substantial evidence that the petitioner violated rule 48.3.

---

3. Administrative Code § 15-227 (a) states:
   "Violations; order to vacate building.
   "a. Any building, structure, enclosure, vessel, place or premises perilous to life or property in case of fire therein or adjacent thereto, by reason of the nature or condition of its contents, its use, the overcrowding of persons therein . . . is a public nuisance within the meaning of the code and the penal law. The commissioner is empowered to abate any such public nuisance."

To hold otherwise, would, in effect, permit the SLA to make an independent determination that the petitioner was in violation of the occupancy law as contained in the Administrative Code. However, the SLA does not have jurisdiction to determine whether the petitioner is in conformance with or in violation of the New York City Administrative Code. (*See* Administrative Code § 28-103.1 [stating that the Administrative Code shall be enforced by the commissioner of buildings and under certain limited circumstances it may also be enforced by the commissioner of small business services and the fire commissioner]; *see also Matter of Tze Chun Liao v New York State Banking Dept.*, 74 NY2d 505 [1989] [an administrative agency can act only to implement its charter as it is written; it cannot create rules not contemplated or authorized by the legislature and thereby, in effect, empower itself to rewrite or add substantially to the administrative charter itself].) Accordingly, we find that the SLA exceeded its authority in determining that the petitioner violated the Administrative Code and through such violation ran afoul of rule 48.3.

We note that *Matter of Cris Place, Inc. v New York State Liq. Auth.* (56 AD3d 339 [1st Dept 2008]), *Matter of Dawkins v New York State Liq. Auth.* (47 AD3d 440 [1st Dept 2008]) and *Matter of Moonwalkers Rest. Corp. v New York State Liq. Auth.* (250 AD2d 428 [1st Dept 1998]) are inapplicable to the instant case. In each of the memorandum decisions, we declared that there was substantial evidence to support the SLA's findings that the licensees had violated some other governmental agency's regulations.

Citing these three cases, the dissent concludes that "[t]his Court has upheld the [SLA's] independent determination of regulatory violations on numerous occasions." We have not. There is no indication in these decisions as to what exactly we found constituted the substantial evidence. Certainly, there is no suggestion that we permitted a finding of a violation based on the SLA's independent determination rather than on a valid summons issued by the underlying regulatory agency.

In any event, we find that rules 48.2 and 48.3 are ultra vires as applied because the SLA failed to adhere to the legislative requirements contained in the statutory predicate. It is a fundamental principle of administrative law that an administrative agency has no authority to create rules and regulations without a statutory predicate. (*Rotunno v City of Rochester*, 120 AD2d 160, 163 [4th Dept 1986], *affd* 71 NY2d 995 [1988].)

Under the Alcoholic Beverage Control Law, the Legislature has granted the SLA only specific and particular, rather than general and substantive, rule-making authority to effectuate the purpose of the Alcoholic Beverage Control Law. (*Id.*) When the SLA has acted ultra vires by exercising impermissible substantive rulemaking, the courts have declared those rules null and void. (*See Matter of Beer Garden v New York State Liq. Auth.*, 79 NY2d 266 [1992] [rule 53.1 (q) struck down]; *Matter of La Trieste Rest. & Cabaret v New York State Liq. Auth.*, 228 AD2d 172 [1st Dept 1996] [rule 53.1 (s) struck down]; *Jay-Jay Cabaret v State of New York*, 215 AD2d 172 [1st Dept 1995], *lv denied* 87 NY2d 802 [1995] [rule 53.1 (s) struck down].)

It is undisputed that the statutory predicate to rules 48.2 and 48.3 is section 106 (6) of the Alcoholic Beverage Control Law.[4] Alcoholic Beverage Control Law § 106 (6) provides that "[n]o person licensed to sell alcoholic beverages shall . . . suffer or permit [the licensed] premises to become disorderly."

The Court of Appeals has held "that conduct is not suffered or permitted unless the licensee or his manager knew or should have known of the asserted disorderly condition on the premises and tolerated its existence." (*Matter of Playboy Club of N.Y. v State Liq. Auth. of State of N.Y.*, 23 NY2d 544, 550 [1969] [internal quotation marks and citation omitted].) In determining whether petitioner "suffer[ed] or permit[ted]" its premises to become disorderly in violation of Alcoholic Beverage Control Law § 106 (6), the issue is not merely whether exposure occurred, but whether the licensee took timely and appropriate action or simply stood by and permitted the disorderly conduct to continue.

In *Matter of Beer Garden*, the Court of Appeals applied Alcoholic Beverage Control Law § 106 (6) and struck down rule 53.1 (q) on the grounds that the SLA had acted without statutory authority in promulgating a "no-fault" rule that did not contain the requisite "suffer or permit" awareness element. (79 NY2d at 275.)[5] The Court held that "[w]hatever power the SLA may have to delineate 'for cause' grounds for revocation not

---

4. The SLA also relies on Alcoholic Beverage Control Law § 2. However, it is settled that section 2 "cannot be relied upon, as a matter of law, by the SLA as authority for substantive rule-making." (*Jay-Jay Cabaret*, 215 AD2d at 172.)

5. Rule 53.1 (q) authorizes revocation, cancellation, or suspension of a liquor license if "any noise, disturbance, misconduct, disorder, act or activity occurs in the licensed premises . . . or results in the licensed premises becoming a focal point for police attention."

specified in the statute, that general authority cannot override the specific legislative mandate of an awareness element in section 106 governing disorderly conduct." (*Matter of Beer Garden*, 79 NY2d at 276-277 [citations omitted].)

In *Jay-Jay Cabaret*, this Court, following *Matter of Beer Garden*, held that rule 53.1 (s) was invalid, because it imposed a " 'no-fault' proximity rule requiring no element of 'disorder' to establish a violation" (215 AD2d at 173).[6] We determined that the SLA had no authority to promulgate rule 53.1 (s) because it was, in effect, a categorical, no-fault blanket proximity prohibition banning topless dancing within six feet of patrons regardless of how orderly the licensed premises may otherwise have been. In other words, we determined that a regulation promulgated pursuant to Alcoholic Beverage Control Law § 106 (6) must contain "disorder" as an independent element, and before certain conduct can be subject to regulation, it must necessarily lead to "disorder."

Here, just as in *Matter of Beer Garden*, we find that rule 48.2 was promulgated as a "no-fault" rule without the requisite element of awareness. Rule 48.2 states that "[i]t shall be the obligation of each [licensee] to insure that a high degree of supervision is exercised over the conduct of the licensed establishment at all times in order to safeguard against abuses of the license privilege." It continues by stating that each licensee "will be held strictly accountable for all violations that occur in the licensed premises and are committed by or suffered and permitted by any *manager, agent or employee* or such licensee" (emphasis added).

A plain reading of rule 48.2 makes patent that the petitioner can be held "strictly accountable" for failing to maintain "a high degree of supervision" even though there was no finding of anyone in a managerial position being aware of any occurrence of disorder on the premises. In other words, the rule improperly imputes an employee's knowledge of improper activity to the

---

6.  Rule 53.1 (s) states:

    "Any license or permit issued pursuant to the Alcoholic Beverage Control Law may be revoked, cancelled or suspended for . . . suffering or permitting any female to appear on licensed premises in such manner or attire as to expose to view any portion of the breast below the top of the areola, or any simulation thereof. The provisions of this subdivision shall not apply to any female entertainer performing on a stage or platform which is at least 18 inches above the immediate floor level and which is removed at least six feet from the nearest patron."

petitioner. (*Matter of Island Mermaid Rest. Corp. v New York State Liq. Auth.*, 52 AD3d 603, 604 [2d Dept 2008] [absent evidence that a liquor licensee or someone vested with managerial or supervisory authority whose knowledge could be imputed to licensee knew or should have known of improper activity on licensed premises, a finding that the licensee "suffered or permitted" improper conduct, in violation of the Alcoholic Beverage Control Law, cannot be sustained].) As such, rule 48.2 is beyond the rule-making authority of the SLA because section 106 (6) of the Alcoholic Beverage Control Law requires that *the licensee* (or someone vested with managerial authority) "suffer or permit" the "disorder[ ]." (*See Matter of McNulty v New York State Tax Commn.*, 70 NY2d 788 [1987] [a state agency does not have the authority to create a rule that is not in harmony with the spirit and letter of the enabling statute].)

Furthermore, we find that rule 48.3 is also ultra vires as applied. Rule 48.3 requires licensees "to conform with all applicable building codes, fire, health, safety and governmental regulations." A plain reading of the rule makes clear that there is no requirement the licensee "suffer or permit" a violation of a governmental regulation. (*Matter of Beer Garden*, 79 NY2d at 276-277.) In other words, a licensee can be found to be in violation of rule 48.3 without any evidence that the licensee was aware that he lacked conformance with any one of a multitude of applicable governmental regulations. Moreover, simply because a licensee may not be in conformance with "all applicable . . . governmental regulations" does not require the conclusion that he or she has permitted "disorderly" conduct to occur on the premises. (*Jay-Jay Cabaret*, 215 AD2d at 172-173.)

We reject the dissent's contention that this case does not fall within the ambit of *Matter of Beer Garden*. The dissent would allow an inference of "culpable mental state" by positing that the petitioner's owner was on the premises, observed the condition of overcrowding and did nothing to alleviate it. However, this view presumes the validity of the ad hoc and unsubstantiated determination of overcrowding made by an SLA investigator and the anonymous statement scribbled on a dismissed summons, while dismissing that what the petitioner's owner observed was, in fact, not overcrowding. In other words, the dissent imputes, to the licensee's detriment, not facts but base assumptions proffered by the SLA without any evidence that the assumptions on overcrowding were correct.

Accordingly, in this proceeding, brought pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court,

44

New York County [Sheila Abdus-Salaam, J.], entered on or about May 8, 2008), the petition challenging the determination of respondent New York State Liquor Authority, dated March 20, 2008, which, upon a finding that petitioner violated Rules of the State Liquor Authority rules 54.2 (9 NYCRR 48.2) and 54.3 (9 NYCRR 48.3), revoked petitioner's on-premises liquor license, should be granted and the determination annulled, without costs.

Tom, J.P. (dissenting). Substantial evidence supports respondent's determination that the licensed establishment was permitted to become overcrowded in violation of Rules of the State Liquor Authority rules 54.2 (9 NYCRR 48.2) (failure to exercise adequate supervision over the conduct of the licensed establishment) and 54.3 (9 NYCRR 48.3) (failure to comply with all applicable governmental regulations). The imposition of sanctions against petitioner for such violations is consistent with the precedent of this Department (*Matter of Cris Place, Inc. v New York State Liq. Auth.*, 56 AD3d 339 [2008] [locked exits, cabaret activity, overcrowding and hazardous conditions]; *Matter of Hogs & Heifers v New York State Liq. Auth.*, 294 AD2d 137, 138 [2002], *lv denied* 98 NY2d 612 [2002] [health regulations]). Since no compelling need to depart from established case law is demonstrated, I respectfully dissent.

Testimony was received from a senior investigator for respondent that he observed approximately 75 to 100 people in the cellar of the premises, with patrons "standing shoulder to shoulder" throughout the establishment. A summons was issued to petitioner for an "overcrowded bar" based on a police officer's observation of "approximately 300 patrons inside [the licensed establishment]" (*see Matter of 7th Ave. & Grove St. Corp. v New York State Liq. Auth.*, 215 AD2d 107, 108 [1995]). The certificate of occupancy, produced by petitioner's owner at the direction of police, permits a maximum occupancy of only 61 people in the cellar and 135 on the first floor. Furthermore, petitioner's owner testified that the establishment's security guard tracked the number of admitted patrons by use of a counting device and that the police alleviated the overcrowding by directing the guard to deny entry to additional persons while inducing patrons to leave the premises by virtue of the obvious police presence.

As this Court has recently noted, review of an administrative determination is governed by the rather low threshold of substantial evidence, which is less than even a preponderance of the evidence, and may be predicated on both hearsay and

circumstantial evidence (*see generally Matter of Café La China Corp. v New York State Liq. Auth.*, 43 AD3d 280, 280-281 [2007]). The findings of an Administrative Law Judge (ALJ) involve the assessment of credibility and the drawing of reasonable inferences, "and the courts may not weigh the evidence or reject the conclusion of the administrative agency where the evidence is conflicting and room for choice exists" (*id.* at 281).

The testimony of respondent's investigator that people in the licensed establishment were "standing shoulder to shoulder" and the summons issued by a police officer stating that there were approximately 300 people on the premises constitute substantial evidence of overcrowding. Contrary to the majority's intimation, petitioner's owner, Sameh Jakob, never testified that the count maintained by the club's doorman showed that the premises were within occupancy limits. Jakob's bald denial of overcrowding merely raised a question of fact for resolution by the ALJ, whose determination is supported by the record of the proceedings (*see Matter of Menick v Bruckman*, 279 NY 795 [1939], *revg* 255 App Div 810 [1938]; *cf. Matter of Culture Club of NYC v New York State Liq. Auth.*, 294 AD2d 204 [2002]).

Although the summons for overcrowding was ultimately dismissed for failure to prosecute, this disposition has no preclusive effect.* As respondent's counsel explained, "the police officers never showed up to court," and the dismissal was not on the merits.

The majority's hypothesis that the ALJ lacked authority to determine that the premises were overcrowded is not supported by case law. While respondent may rely on violations issued by another agency to support a finding that its own regulations have been violated (*see e.g. Matter of Jericho Pub v New York State Liq. Auth.*, 4 AD3d 228 [2004] [signage]), there is no requirement that it do so. This Court has upheld the Liquor Authority's independent determination of regulatory violations on numerous occasions (*see e.g. Matter of Cris Place, Inc.*, 56 AD3d at 339 [inter alia, overcrowding]; *Matter of Dawkins v New York State Liq. Auth.*, 47 AD3d 440 [2008] [signage]; *Matter of Moonwalkers Rest. Corp. v New York State Liq. Auth.*, 250 AD2d 428 [1998] [overcrowding]; *cf. Matter of Culture Club of NYC*, 294 AD2d at 204 [insufficient evidence of excessive noise to sustain violation of Alcohol Beverage Control Law § 106 (6)]).

---

* A violation of the Alcoholic Beverage Control Law may be prosecuted in Criminal Court as a misdemeanor (Alcoholic Beverage Control Law § 130 [3]).

As to the contention that respondent lacks authority to promulgate a rule requiring licensed premises to comply with occupancy restrictions, the simple answer is that such requirement is imposed not by State Liquor Authority regulations but by the certificate of occupancy issued for the premises. The Court of Appeals, while according preclusive effect to the Alcoholic Beverage Control Law, has noted that "establishments selling alcoholic beverages are not exempt from local laws of general application" (*Matter of Lansdown Entertainment Corp. v New York City Dept of Consumer Affairs*, 74 NY2d 761, 763 [1989]). Thus, respondent did not impermissibly *create* a rule not contemplated by its enabling legislation (*see Matter of Tze Chun Liao v New York State Banking Dept.*, 74 NY2d 505, 510 [1989]) or in excess of the authority conferred under Alcoholic Beverage Control Law § 106 (6), as the majority reasons; rather, it found that petitioner violated the occupancy limits imposed on the premises under the certificate of occupancy issued by the Buildings Department.

Petitioner has tried very hard to bring this matter within the ambit of *Matter of Beer Garden v New York State Liq. Auth.* (79 NY2d 266, 275 [1992]), in which the Court of Appeals held that a rule making any disorder on or about the licensed premises a basis for adverse action exceeds the prohibition of Alcoholic Beverage Control Law § 106 (6) that no licensee " 'suffer or permit [the licensed] premises to become disorderly.' " The basis of the decision is that the agency could not remove the statutory requirement of a "culpable mental state on the part of the licensee" (*id.* at 276).

The present matter is clearly distinguishable. First, as discussed, the regulation violated is not one issued by respondent. Second, the record contains substantial evidence that petitioner's owner, Sameh Jakob, was on the premises at the time of the overcrowding, had observed the condition and did nothing to alleviate it until instructed by police to restrict entry by patrons. Furthermore, Jakob failed to supervise the club's doorman, who concededly kept a count of the number of persons admitted, so as to avoid exceeding the rated capacity of the premises, as provided in the certificate of occupancy. Thus, to the extent that *Matter of Beer Garden* is applicable, the evidence demonstrates the requisite culpable mental state on behalf of petitioner's principal.

In view of petitioner's extensive prior history of sustained violations, including two for overcrowding and three for

disorderliness, the penalty of cancellation is not shocking to the sense of fairness (*see Matter of Monessar v New York State Liq. Auth.*, 266 AD2d 123 [1999]).

Accordingly, the determination should be confirmed.

SAXE and DEGRASSE, JJ., concur with CATTERSON, J.: TOM, J.P., and MOSKOWITZ, J., dissent in a separate opinion by TOM, J.P.

In this proceeding, brought pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court, New York County, entered on or about May 8, 2008), petition granted and the determination revoking petitioner's on-premises liquor license annulled, without costs.