OPINION OF THE COURT
Per Curiam.
Judgment of conviction, rendered October 6, 2011, reversed, on the law and on the facts, summonses dismissed, and fine, if paid, remitted.
This Summons Part prosecution stems from allegations that defendant, the alleged “owner/manager” of a Lower Manhattan bar, allowed the premises to become overcrowded in violation of the Fire Code (see Administrative Code of City of NY § 15-227 [a]) and violated an applicable Building Code egress requirement that there be “at least two door openings . . . leading to exits, from every room or enclosed space” of buildings with the type of “occupant load” of the premises at issue (see Administrative Code § 27-365 [a]). The police testimony elicited at trial showed that the officer who issued the summonses observed roughly 100 individuals standing in front of and across the street from the bar; that, upon conducting a “business inspection” of the interior of the premises, he “approximat[ed]” that there were “well over the ... 75 people” allowed by the governing certificate of occupancy; and that upon walking toward the rear of the premises, he observed only “one exit or entrance to the establishment.”
 With respect to the alleged overcrowding condition, the unadorned police testimony that there were “well over” the legal limit of 75 persons inside the premises — a “guesstimate” which, the officer admitted, was arrived at without the benefit of a headcount or the use of a counting device — appears largely speculative and, upon our independent review of the weight of the evidence (see People v Danielson, 9 NY3d 342 [2007]), was insufficient to establish beyond a reasonable doubt the violation of occupancy limits here alleged (cf. Matter of 47 Ave. B. E. Inc. v New York State Liq. Auth., 13 NY3d 820 [2009], revg 65 AD3d *57 33 [2009] [finding of overcrowding condition sustained under CPLR article 78 “substantial evidence” review]). Defendant’s conviction for the building code violation stands on no firmer ground, where the floor plan of the commercial premises depicted two exits, one of which led from the rear kitchen area to the backyard, and where the testifying police officer acknowledged that his walk-through of the premises ended at the front of the kitchen and that, while he looked into the kitchen area, he did not actually enter it.
Shulman, J.E, Hunter, Jr., and Torres, JJ. concur.