OPINION OF THE COURT
Bellacosa, J.
Appellant Tze Chun Liao seeks to annul a determination of the New York State Banking Department denying him a check casher license at his stationery store location in The Bronx. The Department used "destructive competition” as the ground for denial, having almost simultaneously considered and licensed a satellite for a city-wide check cashing corporation in close proximity to Mr. Liao’s desired enterprise. The Legislature has not authorized the Superintendent of Banks to use "destructive competition” as a criterion for the issuance or denial of check casher licenses. Nor is there any duly promulgated Banking Department regulation in that respect. We thus conclude that the Department’s licensing determination was not lawfully founded and that its 1985 policy letter purporting to enunciate the "destructive competition” factor fails to shore up the statutory vacuum. The denial of the license should be annulled, so we reverse the order of the Appellate Division.
Due to dramatic lessening of personal consumer services at traditional banking institutions, licensed check cashing outlets have emerged as significant servicing businesses, especially in *508 urban neighborhoods throughout New York City. Residents of these areas have been left with little choice but to resort to these multipurposed commercial shops for their primary monetary transactions, such as cashing their paychecks, income maintenance checks, food stamp checks; for payment of utility bills; and for purchasing money orders. In exchange for these services, a licensed check casher is authorized to charge a fee (Banking Law § 372) — .9 of 1% of the amount of the check or 50 cents, whichever is greater (3 NYCRR 400.13). Pursuant to article IX-A of the Banking Law, the Department is authorized to license check cashers and to regulate and supervise the check cashing industry (Banking Law § 367 [1]). Banking Law § 369 (1) sets forth the requirements in pertinent part: "1. If the superintendent shall find that the financial responsibility, experience, character, and general fitness of the applicant * * * are such as to command the confidence of the community and to warrant belief that the business will be operated honestly, fairly, and efficiently * * * and if the superintendent shall find that the granting of such application will promote the convenience and advantage of the area in which such business is to be conducted, and if the superintendent shall find that the applicant has available for the operation of * * * each location * * * liquid assets of at least ten thousand dollars, he shall thereupon execute a license * * * to permit the cashing of checks, drafts and money orders in accordance with the provisions of this article” (emphasis added). Duly promulgated regulations also purport to implement the legislative standards (see, 3 NYCRR 400 et seq.; Banking Law § 369 [1]).
Neither the statute nor the regulatory standards mention the "destructive competition” factor. Rather, it sprang forth in 1985 for the first time fully grown as part of the Department’s license approval process, after consultation by Department officials with banking industry representatives. It is found "formally” only in a letter-statement of the Banking Superintendent, dated December 16,1985, providing:
"1. Distance between competing check casher locations will no longer, in and of itself, be a prime factor in considering whether or not to approve an application.
"2. The standards employed in licensing decisions will conform to statutory requirements including financial responsibility, experience, character and fitness of the applicant; assurance that the business will be operated honestly, fairly and *509 efficiently within the purposes set forth in the statute; and that the application will promote the convenience and advantage of the public in the service area.
"3. The Banking Department, in deciding upon an application, will include in its determination an evaluation of any potential destructive competition” (see, Letter of Superintendent of Banks to Chief Executive Officer of State of NY Banking Dept, rec on app, at 74 [emphasis added]; Affidavit of Deputy Superintendent of Banks, rec on app, at 60).
In August 1986, Mr. Liao, the owner of a small stationery store in The Bronx, applied for his first check casher license. Nine days earlier, Home Check Cashing Corporation (Home Check), the holder of 95 check casher licenses throughout New York City, also had filed an application for a license for a location across the street from the Liao store. Both Mr. Liao and Home Check were afforded the opportunity to object to the other’s application by filing a protest with the Banking Department. Home Check did so based on the close proximity of Mr. Liao’s location to Home Check’s proposed location. That, of course, was no longer a "prime factor” according to subdivision (1) of the Superintendent’s December 16, 1985 letter quoted above. Home Check also urged the Department, however, to consider the potential "destructive competition” that would result to Home Check, presuming, it would seem, that its license approval at that location was a foregone conclusion. Home Check argued it would suffer an estimated 50% loss in potential customers. The Banking Department conducted an investigation into the background of both applicants and, in December, Mr. Liao’s application was denied and Home Check’s application was granted.
The Department’s notification to Mr. Liao that his application had been denied stated: "[W]e have made a decision to grant a license to the competing applicant who submitted an application for a location only 80 feet from your site. * * * Please be aware that this decision in no way precludes you from applying for a license at another location” (see, letter dated Dec. 1, 1986, rec on app, at 73). The Banking Department’s investigative report reveals the examiner rested his recommendation to deny in part on the fact that Home Check’s application for a location across the street had been approved (see, Mem dated Nov. 18, 1986, rec on app, at 148-151). Throughout, the Banking Department has urged that "destructive competition” is a lawful factor and that it was properly applied in this licensing case.
*510 Mr. Liao turned to Supreme Court, which dismissed his petition and his appeal was rejected by the Appellate Division, which affirmed, without opinion. We granted petitioner leave to appeal and now reverse and annul the Banking Department’s determination.
Administrative agencies, as creatures of the Legislature within the executive branch, can act only to implement their charter as it is written and as given to them (Finger Lakes Racing Assn. v New York State Racing & Wagering Bd., 45 NY2d 471, 480). An agency cannot create rules, through its own interstitial declaration, that were not contemplated or authorized by the Legislature and thus, in effect, empower themselves to rewrite or add substantially to the administrative charter itself (Matter of Campagna v Shaffer, 73 NY2d 237, 243; Matter of Consolidated Edison Co. v Department of Envtl. Conservation, 71 NY2d 186, 191-192; Boreali v Axelrod, 71 NY2d 1, 9).
In section 369 of the Banking Law, the Legislature has explicitly enumerated the factors to be considered by the Superintendent for check casher license qualification: "financial responsibility, experience, character, and general fitness of the applicant”; promotion of "the convenience and advantage of the area”; and liquid assets of $10,000 for each check cashing location. There is not a word about "destructive competition”, a term of art and a concept of very specific and significant implications. Surely, had the Legislature intended "destructive competition” — a potent rubric used elsewhere in administrative agency lexicons — as a ground for denial of a check casher license, they knew how to engrave it in statutory form (see, Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 209; McKinney’s Cons Laws of NY, Book 1, Statutes § 240).
The Department’s case is particularly vulnerable in view of the Legislature’s express use in another section of the Banking Law that "all banking organizations shall be supervised and regulated through the banking department in such manner as * * * to eliminate unsound and destructive competition among such banking organizations” (Banking Law § 10 [emphasis added]). We do not have the validity of that provision before us, so, of course, we do not pass on it in any way.
Check casher licensees, however, are not within the statutory definition of "banking organizations” (Banking Law §2 [11]), being defined elsewhere and separately in article IX-A of *511 the Banking Law and under a subchapter entitled "Non-Banking Organizations” (see, 3 NYCRR subchapter B). Thus, the explicitness of the Legislature’s inclusion of "destructive competition” in a section of the Banking Law wholly inapplicable to check cashing institutions manifests the legislative choice to exclude that nettlesome concept from the check casher licensing process.
While we decide no more in this case than that the "destructive competition” concept is not available in the check casher regulatory scheme, it is not without significance that the same economic bunting found in former section 258-c of the Agriculture and Markets Law was repealed in 1987 (L 1987, ch 540, §9 [dealing with milk distribution licensing]). The long and bitter public debate with respect to the legislative authorization for the use of that criterion in a different agency regulatory scheme culminated in this coup de grace upon the signing of the repealer: "The old Depression-era concept of 'destructive competition’ is dead. * * * We move confidently into a new era of 'healthy competition’ that will benefit * * * consumers” (see, Governor’s statement on signing the repealer, July 7,1987, Bill Jacket, L 1987, ch 540).
By legislative policy choice then, consumers should have broader access to cash their weekly paychecks without being subjected to a more tightened marketplace in the grip of already powerful suppliers benefited by the "destructive competition” standard imposed as a governmental regulatory mechanism. It would surely be an ironic twist if the economically superior holder of 95 check casher licenses, vying against the supplicant for his first such license, could use the State’s regulatory process to enforce and assure its own market advantage and domination by getting the State to block its "destructive” competitor.
Finally in this regard, the Banking Department’s argument that "destructive competition” should be viewed as a concept synonymous with or subsumed within the legislative template "to promote the convenience and advantage of the area” crumbles under the applicable legal analysis and legislative history.
The alternative argument advanced by the Department, that we should defer to its expertise, even assuming a valid policy promulgation, in the interpretation and administration of its statute barely requires mention (cf., Matter of Howard v Wyman, 28 NY2d 434, 438). Plainly, "the question [here] is *512 one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459). If the agency’s implementation of its powers violates the clear enablement of the statute, we need accord it no weight (id., at 459); indeed, our exclusive judicial reviewing duty in such instances requires us to act autonomously.
Accordingly, the order of the Appellate Division should be reversed, with costs, the Department’s cross motion to dismiss the petition denied and the determination denying the check casher license annulled; the matter should be remitted to Supreme Court with directions to remand to the Department of Banking for further proceedings on the license application.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order reversed, etc.