*1059 OPINION OF THE COURT
Vincent E. Doyle, J.
Petitioners, seven students at the State University of New York at Buffalo, have commenced a CPLR article 78 proceeding, challenging the University’s imposition of a user fee for intercampus bus service, against respondents, the State University of New York at Buffalo (University) and four of its administrative officials. Cross motions by respondents to dismiss the petition on the grounds of lack of subject matter jurisdiction and for failure to state a cause of action.
According to the petition, the University is made up of two campuses, Main Street (South Campus) and Amherst (North Campus) approximately three miles apart, that due to the inconvenience of the location of the two campuses, the free shuttle bus service was a feature utilized to attract new students; that petitioners accepted offers to study at the University prior to July 1, 1990 based upon representations made to them by recruitment publications distributed by the University; that in reliance on those representations, they accepted offers to study at the University. Further, the University has imposed a user fee for persons who wish to ride the bus that runs between the North and South Campuses of $1 for a single one-way fare, or $50 for an unlimited number of rides in one semester.
In a letter to the students, dated July 30, 1990, University Provost William Greiner explains that the bus fee is part of a necessary financial response to the Legislature’s cut of $9.3 million from the University’s operation budget which includes new fees for services previously provided at no cost to users, but which services cost the University approximately $1 million per year.
A "Committee on University Bus Service,” consisting of students, faculty and administrators, was appointed by University Vice-President Wagner to develop ways to maintain adequate service to students. In its September 24, 1990 report, the Committee concluded that the bus service should not be reduced, but encouraged students to pay the fee which was ultimately instituted on October 1, 1990.
Petitioners contend:
(1) the bus service is not a "special service” for which fees can be charged under Regulations of the Board of Trustees (8 NYCRR) § 302.4;
(2) the fee is arbitrary and capricious;
*1060 (3) the fee is contrary to law;
(4) the fee should be nullified;
(5) free bus service should be reinstituted;
(6) refund fees previously collected for bus services; and
(7) deliver any individual fares previously collected to students or their representative body.
Respondents, in opposition, argue:
(1) this court lacks jurisdiction over a claim for breach of implied contract;
(2) the bus fee has a rational basis on its face; and
(3) the bus fee is authorized by law.
Additional facts have been provided by an affidavit, dated November 26, 1990, of Vice-President for University Services Wagner in which he uncontradictedly avers that all of the official University catalogs upon which petitioners presumably relied and made decisions to attend the University provide express, plainly written notices that fees and the amounts that students could expect to pay in fees are subject to change without notice. Two of the petitioners are undergraduate students in their first year of study. The University’s Undergraduate Education 1989-1991 (at 19) lists estimated costs of attending the University, including tuition, certain fees, room and board, and other expenses, and an estimate of transportation costs. Significantly, the bulletin then states: "The University retains the right to change the above rates at any time. This is an annual budget. Room/board, books and supplies, personal expenses and transportation figures are estimates which vary for each student” (emphasis added).
Four of the petitioners are graduate students in the University’s English Department (Faculty of Arts and Letters). The 1989-91 Graduate Bulletin for the Faculty of Arts and Letters (at 129) contains an estimate of tuition and fees. It then provides, under the heading "Cost of Graduate Education”: "The University reserves the right to change or add to its tuition and fees at any time”.
One of the petitioners is an undergraduate student in the University’s Millard Fillmore College. The current Bulletin of the Millard Fillmore College of the University states (at 19):

"Right to Change Fees

"The University reserves the right to change or add to its tuition and fees at any time”.
At page 15, the same bulletin states:

*1061
"Tuition and Fees

"All charges are subject to change at the discretion of the University and without prior notice.”
The bulletins above-excerpted are available to all students who apply for admission and to current students.
Petitioners have attached to their petition an excerpt from the Undergraduate Viewbook, 1988-90, a "day in the life” photo essay describing life at the University. It refers (at 7) to the "free” shuttle bus service, which was free when this booklet was published. However, at page 50 is listed the estimated costs of attendance, including transportation. Further, it states: "Cost for tuition, fees and University residence hall and food contracts are subject to change without notice. The above figures are based upon 1988-1989 student budgets. Costs for subsequent years may be expected to increase marginally.”
Clearly here, without contradiction or refutation by the petitioners, all of the above excerpts provided prospective and current students with notice that fees are subject to change without notice during students’ matriculation at the University.
Further, the affidavit of Vice-President Wagner avers that, as a result of service budget cuts imposed upon the University in June 1990, the affiant, the president and provost met to develop a strategy to meet these reductions. Their goal was to protect the quality and current level of the University’s academic programs and course offerings. Accordingly, they attempted to reduce expenditures for noninstructional services and to develop additional sources of income. They identified certain noninstructional services, the cost of which was previously borne by the operating budget, and to generate income by charging a user fee to defray the cost of the service. The intercampus bus service was one such service.
Since the ultimate purpose of the plan was to maintain the excellence of the University’s academic programs during the fiscal crisis, rather than canceling courses, the University chose to develop alternative sources of income for noninstructional services.
After the University was directed to make massive cuts to its budget in June 1990, it requested approval from the State University of New York’s Central Administration for a number of fees, including the intercampus bus fee and other increased or new charges. Having obtained the State Univer *1062 sity of New York’s clearance, a letter sent to every student on June 30, 1990 announced the imposition of the fee, as did advertisement of the fees in the University and student press, which fee was ultimately imposed on October 1, 1990. Given the need for immediate reduction, no further notice under the circumstances could be given.
To soften the impact upon persons who might not have had the resources to pay the fee at the time, purchasers were given the option of being billed for the bus service in the spring 1991 semester. Also offered was a discounted one-year pass, while persons who could not pay at all had the option to seek additional financial aid through regular channels. The University interprets the bus service as a "special service” within the meaning of 8 NYCRR 302.4 which states: "302.4 Fines, fees, deposits and charges. The chancellor or his designee is hereby authorized to establish a schedule of reasonable fines, fees, deposits and charges for violation of institutional regulations, late registrations, damage and breakage and special services. ” (Emphasis added.)
Obviously, the term "special services” is not defined in the regulation. Given the facts contained in the petition, that the bus service is not used by all students, that transportation is not an academic instruction, that students are not required to use it, that only those persons wishing to ride the bus are required to pay the user fee, that many students use other means of transportation, this court determines that the University’s interpretation of 8 NYCRR 302.4 is neither irrational nor unreasonable to view the bus service as a "special service”, nor is it arbitrary or capricious (see, Matter of Howard v Wyman, 28 NY2d 434; Matter of Kilgus v Board of Estimate, 308 NY 620; Matter of Campo Corp. v Feinberg, 279 App Div 302, affd 303 NY 995; Matter of Graziani v Rohan, 10 AD2d 154, affd 8 NY2d 967).
Moreover, the University has both inherent and express statutory authority to charge user fees as part of its self-governance (see, Education Law § 355 [2] [b]). Additionally, the Board of Trustees is authorized to regulate fees, charges and all other matters pertaining to the operation and administration of each State-operated institution in the State University (see, Education Law § 355 [2] [h]). Further, the University is authorized to receive moneys from "appropriations, tuition, fees, user charges, sales of products and services and from all other sources” (Education Law § 355 [8] [emphasis added]). Also, the State University, as an agency of the State, has both *1063 the powers expressly conferred by the Legislature (see, Matter of Shankman v Axelrod, 73 NY2d 203) as well as those as are necessary to implement its legislative charter (see, Matter of Tze Chun Liao v New York State Banking Dept., 74 NY2d 505). Thus, the bus fee, within the boundaries of the legislative charter authorizing self-governance and collection of charges and user fees, may be imposed by the University in the instant case. Further where, as here, there is a showing that the University acted for the best interests of the school and absent any ill will, fraud, collusion or other such motives, this court will not interfere and substitute its judgment for that of the University (see, Klein v Board of Higher Educ., 434 F Supp 1113 [SD NY 1977]).
As to the issue of whether the University breached an implied contract with petitioners, it can only be heard in the Court of Claims. It cannot be heard in the Supreme Court (see, Automated Ticket Sys. v Quinn, 70 AD2d 726, mod on other grounds 49 NY2d 792; 8 Weinstein-Korn-Miller, NY Civ Prac ¶ 7806.01, at 78-147). Thus, such relief is denied petitioners.
Finally, as to petitioners’ claim for restitution, it is well settled that mandamus lies only to compel the performance of a ministerial act where there is a clear right to the relief sought (Matter of Legal Aid Socy. v Scheinman, 53 NY2d 12), but is not available, as here, to compel an act in which the officer exercises judgment and discretion (Matter of Gimprich v Board of Educ., 306 NY 401).
For all of the reasons above stated, the petition is dismissed.