Dear Ms. Kelsey:
You have asked for an interpretation of the "grandfathering clause" contained in Banking Law § 374(3). This subsection, enacted in 2001, prohibits national banks and entities doing business under provisions of the Banking Law, other than licensed check cashers, from operating a check-cashing facility at a separate location within three-tenths (3/10) of a mile of an existing check-cashing licensee. A grandfathering clause exempts from this 3/10 of a mile restriction "any separate location which was in operation prior to the effective date of [Section 374(3)]." Banking Law § 374(3). The provision also exempts "any national bank . . . or any person, partnership, association, corporation or other organization doing business under or pursuant to the provisions of this chapter which was engaged in the business of electronic check cashing machines in this state prior to the effective date of this subdivision." Id.
Your question focuses on this second part of the grandfathering clause, which rather than grandfathering existing facilities exempts banks that were engaged in the business of electronic check cashing machines at the time of the provision's enactment, thus permitting qualifying banks to establish future facilities without complying with the 3/10 of a mile location restriction. Your question concerns the extent of this exemption. You ask whether the language should be interpreted as exempting from the 3/10 of a mile restriction (1) any type of separate check-cashing facility operated by a national bank that operated electronic check-cashing machines in New York prior to the provision's effective date, or (2) only electronic check-cashing facilities operated by such entities. Although we find the question here to be close, on balance we conclude that when read in light of the context of section 374(3) as a whole and the purpose of that provision, the language at issue was more likely intended to exempt from the location restriction only additional electronic check-cashing machines operated by qualifying banks.[1]
 BACKGROUND
 State Regulation of Licensed Check Cashers
Since 1944, state law has regulated the business of cashing checks under Article 9-A of the Banking Law ("Licensed Cashers of Checks"). Pursuant to this statutory scheme, it is illegal to engage in the business of cashing checks for consideration without obtaining a license from the Superintendent of Banks. Banking Law § 367(1). A license is granted to operate a check-cashing business at a specific location. Id. § 370. State law and regulations determine the maximum fee that licensees may charge for their services and regulate a number of other business practices of licensees. See, e.g., Banking Law § 372
(directing Superintendent of Banks to establish maximum fees);3 N.Y.C.R.R. § 400.12 (establishing fees); Banking Law § 367(4) (requiring licensees to maintain liquid assets of $10,000); Banking Law § 373 (prohibiting licensees from cashing checks in excess of $15,000). Historically, the Superintendent of Banks has not issued check-cashing licenses for any location within 3/10 of a mile of an existing licensee. This 3/10 of a mile restriction was imposed administratively until 1985, see Matter of Liao v.New York State Banking Dept., 74 N.Y.2d 505, 508-09 (1989), and was codified in 1994, see Banking Law § 369(1), as amended by Law 1994, ch. 546.[2]
As originally enacted, Article 9-A did not apply to banks and other entities that operate pursuant to other provisions of the Banking Law. See Banking Law § 374, as enacted by Law 1944, ch. 593 ("nor shall the provisions of this article apply to any person, partnership, association, corporation or other organization doing business under or pursuant to the provisions of the banking law, nor to any national bank").[3] Thus, banks could operate stand-alone check-cashing facilities without obtaining a check-cashing license, and without being subject to the various restrictions contained in Article 9-A, including the fees limits and the 3/10 of a mile restriction.
Legislative History of Banking Law § 374(3)
After a small number of banks began operating separate check-cashing facilities in the 1990s, the Legislature proposed bills to subject these facilities to all or some of Article 9-A's requirements and restrictions imposed upon licensed check cashers. See S7166 (intr. Apr. 22, 1998); A8577 (intr. May 26, 1999); S4543-B (intr. Apr. 12, 1999). Ultimately, section 374 of the Banking Law was amended in 2001 to add a new subsection 3, prohibiting banks from operating separate check-cashing facilities, including by means of electronic check-cashing machines, within 3/10 of a mile of an existing check-cashing licensee. See Law 2001, ch. 591. The amendment did not subject banks to the other restrictions or licensing requirements of Article 9-A.
In subjecting banks to the 3/10 of a mile restriction, the Legislature decided to exempt certain bank facilities. As originally proposed, only separate check-cashing locations operated by banks, where that particular check-cashing facility had been in operation before the provision became effective, would have been exempt from the 3/10 of a mile restriction.[4] See S5006 (intr. Apr. 17, 2001). During the legislative process, the Senate bill was amended to specify that the location restriction on banks included locations consisting of electronic check-cashing machines,[5] and to exempt from the restriction both locations actually in operation and those that had been approved for operation by the Superintendent of Banks. See S5006-A (int. Apr. 17, 2001); A8806 (int. May 17, 2001).
The language of the exemption was amended again during the legislative process. The reference to locations approved for operation was deleted and the clause focusing on electronic check-cashing machines, which is the subject of this opinion, was added. The final enacted version of Banking Law § 374(3) provides:
 [N]o national bank or any person, partnership, association, corporation or other organization doing business under or pursuant to the provisions of this chapter, except a licensee under this article, shall conduct the business of cashing checks at a separate location which is used primarily by any such entity for the purpose of cashing checks, or at a separate location by means of an electronic check cashing machine, unless such location is not closer than [3/10 of a mile] from an existing licensee; provided however that this restriction shall not apply to any separate location which was in operation prior to the effective date of this subdivision nor shall it apply to any national bank or any person, partnership, association, corporation or other organization doing business under or pursuant to the provisions of this chapter which was engaged in the business of electronic check cashing machines in this state prior to the effective date of this subdivision. Banking Law § 374(3) (emphasis added).[6] The focus of this opinion is the meaning of the second part of this grandfathering clause, underlined above.[7]
 ANALYSIS
As you have indicated, there are two possible interpretations of the exemption as applied to a national bank that was engaged "in the business of electronic check cashing machines" in New York prior to the provision's effective date of February 8, 2002.
Under the first interpretation, the provision can be read as exempting a qualifying national bank as an entity, thus excluding from the 3/10 of a mile location restriction any type of separate check-cashing facility operated by such a national bank, whether an electronic, staffed, or mixed electronic and staff facility. Accordingly, such a bank would be authorized to locate additional check-cashing facilities of any type, whether staffed or consisting only of electronic check-cashing machines, without regard to the location restriction.[8]
Under the second interpretation, which you have indicated the Banking Department has followed, the provision can be read as exempting from the location restriction only electroniccheck-cashing machines operated by a qualifying national bank, thus allowing the qualifying bank to locate additional electronic check-cashing machines without regard to the location restriction, but not additional staffed or mixed staff and electronic facilities.[9]
The first interpretation finds some support in a literal reading of the provision. See Banking Law § 374(3) ("nor shall [the 3/10 of a mile location restriction] apply to any national bank . . . which was engaged in the business of electronic check cashing machines in this state prior to the effective date of this subdivision"). This does not end the inquiry, however.
In interpreting a statute, the primary goal is to give effect to the Legislature's intent. See Riley v. County of Broome,95 N.Y.2d 455, 463 (2000); Council of City of New York v.Giuliani, 93 N.Y.2d 60, 69 (1999). Thus, the New York Court of Appeals has held that even when statutory language appears unambiguous it is appropriate to look to legislative history, context and statutory purpose as a guide to ascertaining legislative intent. See Riley v. County of Broome,95 N.Y.2d at 463 ("it is appropriate to examine the legislative history even though the language [of the statute] is clear"); New YorkState Bankers Ass'n v. Albright, 38 N.Y.2d 430, 434 (1975) ("While the statutes may appear literally `unambiguous' on their face, the absence of ambiguity facially is never conclusive. Sound principles of statutory interpretation generally require examination of a statute's legislative history and context to determine its meaning and scope.").
When a literal reading of a statute leads to an unreasonable result or defeats the purpose of the statute, departure from the plain meaning may be warranted. See Council of City of NewYork v. Giuliani, 93 N.Y.2d at 69 ("Literal meanings of words are not to be adhered to or suffered to `defeat the general purpose and manifest policy intended to be promoted.'" (quotingPeople v. Ryan, 274 N.Y. 149, 152 (1937))); Matter of New YorkCity Asbestos Litigation, 82 N.Y.2d 342, 350 (1993) (rejecting literal interpretation of statute and stating that "[a] construction of a statute which leads to such unreasonable result should be avoided"); Zappone v. Home Ins. Co., 55 N.Y.2d 131,137 (1982) (relying on presumption that legislature did not intend unreasonable result and construing statutory language in light of purpose); Statutes §§ 111, 143, 1 McKinney's Cons. Laws of N.Y. at 225, 286 (1971).
With these principles in mind, we examine the purpose of section 374(3) as a whole. As explained below, we do not believe that a literal reading of section 374(3) gives effect to the statute's purpose, and accordingly we reject the first interpretation you describe.
In our view, three elements of section 374(3) are relevant to ascertaining the Legislature's intent in enacting the grandfathering clause: (1) the overall purpose of section 374(3); (2) that the grandfathering clause creates an exception to this purpose; and (3) the limited purpose of the grandfathering clause.
Section 374(3) prohibits banks from operating separate check-cashing facilities within 3/10 of a mile from an existing check-cashing licensee. It was proposed "[t]o ensure that the existing distance standards governing the licensing of check casher operations apply to the establishment of separate check cashing operations established by banking institutions." New York State Senate, Introducer's Memorandum in Support of S5006B (2001) (purpose of proposed legislation); New York State Assembly, Introducer's Memorandum in Support of A8806A (2001) (same). According to the sponsors' memoranda, banks' establishment of check-cashing facilities separate from their regular banking operations was viewed as potentially impacting the stability of the check-cashing industry, which, because of strict limits on the fees that can be charged, relies upon volume of business to ensure a profit. Thus, it was determined that such facilities should be subject to the same location restriction generally applicable to licensed check cashers, as a means of protecting the viability of the check-cashing industry. See New York State Senate, Introducer's Memorandum in Support of S5006B (2001) (justification); New York State Assembly, Introducer's Memorandum in Support of A8806A (2001) (same); Memorandum of Senator Hugh T. Farley, reprinted in 2001 N.Y.S. Legislative Annual 344, 345.
Also relevant is the purpose of the exemptions themselves. The grandfathering clause creates an exception to section 374(3)'s prohibition — it allows certain check-cashing facilities operated by banks to be located within 3/10 of a mile from a check-cashing licensee. The enactment history of the grandfathering clause suggests that its purpose was to protect the investment interest of banks that were already operating separate check-cashing facilities. As originally proposed, the grandfathering clause was limited to existing locations already in operation. The purpose of this type of exception is self-evident — to protect the bank's investment in its existing facilities. The bill was then amended to exempt both facilities already in operation and those that had been approved for operation. Again, this exception relates to the bank's financial investment. Thus, when the grandfathering provision was amended during the legislative process to extend additional protections to banks that were operating electronic check-cashing machines, we can presume that the Legislature was motivated by the same concern — protecting the financial interests of banks that had already invested in electronic check-cashing equipment.[10]
We believe that interpreting this exemption as allowing banks that were operating electronic check-cashing facilities to locate additional check-cashing machines, but not additional staffed facilities, without regard to the 3/10 of a mile restriction reasonably comports with both the purpose of the section 374(3) as a whole, and the limited purpose of the grandfathering provision.
First, there is a meaningful distinction between staffed and electronic check-cashing facilities that is relevant to section 374's primary purpose. You have informed us that staffed check-cashing facilities generally provide additional types of services that are not available from a check-cashing machine, such as the sale of money orders, money transfer services, and the payment of utility bills. Moreover, most check-cashing licensees operate staffed facilities that offer these additional services. Thus, electronic facilities are less likely than staffed facilities to directly compete with check-cashing licensees. For this reason, interpreting the exemption as permitting banks that had invested in electronic check-cashing machines to establish only additional electronic facilities within 3/10 of a mile of existing check-cashing licensees better serves the statutory purpose of protecting the stability of the check-cashing industry.
At the same time, limiting the exemption to additional electronic check-cashing facilities still meaningfully protects the investment of such banks in electronic check-cashing equipment. Exempting both existing (under the first part of the grandfathering clause) and future electronic check-cashing machines of these banks protects a bank's investment in existing equipment and its commitment to this type of operation. The Legislature could have reasonably concluded that a bank's investment in electronic check-cashing machines warranted allowing the bank to continue to expand that type of operation.
On the other hand, interpreting the provision to allow qualifying banks to locate additional check-cashing facilities ofany type, electronic or staffed, goes well beyond the purpose of protecting the banks' financial investment while further abrogating the goal of the amendment. That is, allowing banks that had invested in electronic check-cashing machines to locate additional staffed facilities near existing check-cashing licensees would be more likely to undermine the stability of the check-cashing industry, without any reasonable connection to the bank's previous investment in electronic check-cashing machines.
That only a few banking organizations were in the business of electronic check-cashing machines at the time the legislation was proposed, and thus come within the terms of the second exemption, does not change our analysis. The legislative history of section 374(3) indicates that the Legislature was aware that only "a few" banking institutions had established separate check-cashing facilities, but that it was nonetheless concerned with the potential impact of such operations on the check-cashing industry. Memorandum of Senator Hugh T. Farley, reprinted in
2001 N.Y.S. Legislative Annual 344. To the extent the Legislature was concerned with protecting the viability of licensees when it imposed the location restriction on banks, it is the potential number of individual check-cashing facilities that would compete with licensees that is relevant, rather than the number of banking organizations permitted to operate such facilities. Even if the second part of the grandfathering provision applies to only a few banking organizations, it permits qualifying banks to establish a potentially unlimited number of additional check-cashing facilities within the territory of an existing licensee.[11]
Not only does a literal interpretation of section 374(3) seem at odds with the Legislature's purpose, but we do not find anything in the legislative history of this enactment that warrants strict adherence to the provision's literal meaning. There is no explanation of the grandfathering provision in the sponsors' memoranda that accompanied the bills or in the memoranda of other government agencies contained in the bill jacket. Certain letters in the bill jacket from representatives of the banking industry urging the Governor to veto the legislation in its entirety indicate that the grandfathering clause exempts, without qualification, banks that are already in the business of electronic check-cashing machines. See Letter on behalf of Metropolitan National Bank (June 27, 2001), at 1,reprinted in Bill Jacket for ch. 591 (2001), at 12; Letter from New York Bankers Association (July 10, 2001), at 3, reprintedin Bill Jacket for ch. 591 (2001), at 16; Letter from New York Bankers Association (Dec. 26, 2001), at 1, reprinted in Bill Jacket for ch. 591 (2001), at 20. However, because these letters follow a plain reading of the provision and are written on behalf of private entities that would benefit from a broad interpretation of the grandfathering clause, we do not believe they should be accorded much weight in deciphering legislative intent. Indeed, a letter from the Check Cashers Association, whose members would benefit from the most narrow reading of the grandfathering clause, describes the exemption as applying only to preexisting locations. See Letter from Check Cashers Association of New York (Sept. 4, 2001), at 2, reprinted in
Bill Jacket for ch. 591 (2001), at 10.
Nor is the reference to grandfathering "certain entities engaged in the `business of electronic check cashing'" in the description of the amendment contained in the Banking Department's 2001 Annual Report, see New York Banking Dep't, Annual Report, Schedule F, at 2 (2001), persuasive evidence on the issue of legislative intent. This description is contained in a statutorily required summary of amendments to the Banking Law adopted that year, see Banking Law 43(8), and does not indicate that the Department had considered the issue presented here or determined that the Legislature intended to exempt both staffed and electronic facilities of qualifying banks.[12]
 CONCLUSION
We conclude that the grandfathering clause in Banking Law § 374(3) should be interpreted as exempting from the 3/10 of a mile restriction any separate check-cashing facilities of banks that were in operation when the provision became effective, as well as any existing and future electronic check-cashing machine facilities operated by banks that were in the business of electronic check-cashing machines on the effective date.
Very truly yours,
ELIOT SPITZER Attorney General
[1] You have not asked, and we do not consider, the question of whether federal law preempts application of section 374(3) to national banks.
[2] In 2004, Banking Law § 369(1) was amended to except from the 3/10 of a mile restriction certain check-cashing licensees who engage in the cashing of checks only for payees who are other than natural persons. See Law 2004, ch. 432.
[3] This language has been slightly altered from the original enactment, but without significant substantive change. See
Banking Law § 374(1).
[4] Bills introduced in prior legislative sessions similarly would have exempted from the 3/10 of a mile restriction only separate check-cashing locations of banks that were in operation.See A8577-B (intr. May 26, 1999); S4543-B (intr. Apr. 12, 1999).
[5] Article 9-A had only recently been amended to specify that the statutory scheme governing licensed check-cashing locations covered electronic check-cashing machines as well as staffed facilities. See Law 2000, ch. 582 (enacted Dec. 8, 2000) (codified at Banking Law § 374(2)).
[6] By subsequent amendment, the provision applying the 3/10 of a mile restriction to banks was made subject to a three-year sunset date. See Law 2002, ch. 29. That sunset date was then extended for an additional three years, see Law 2003, ch. 635, and the provision is thus set to expire on February 8, 2008.
[7] We note that the exemption from the 3/10 of a mile restriction for certain banking facilities in Banking Law § 374(3) does not appear to apply to facilities that operate as licensed check cashers under Article 9-A. The exemptions in section 374(3) apply only to the 3/10 of a mile restriction imposed by that section — which by its terms does not apply to licensees under Article 9-A. See Banking Law § 374(3) ("no national bank [or any entity doing business under the Banking Law], except a licensee under this article, shall conduct the business of cashing checks at a separate location which is used primarily by any such entity for the purpose of cashing checks, or at a separate location by means of an electronic check cashing machine, unless such separate location is not closer than [3/10 of a mile] from an existing licensee; provided however, thatthis restriction shall not apply to. . . ." (emphasis added)). A check-cashing location licensed under Article 9-A is subject to a 3/10 of a mile location restriction pursuant to Banking Law § 369(1), not pursuant to section 374.
[8] This interpretation is supported by Metropolitan National Bank, whose submissions on this issue you have included with your request. We have also received and reviewed additional submissions from Metropolitan National Bank.
[9] This interpretation is supported by letters written after passage of the statute to the Banking Department from the Senate Sponsor, Senator Hugh Farley, as well as from members of the Senate Banking Committee, copies of which you have included with your request.
[10] While the sponsors' memoranda does not discuss the purpose or construction of the grandfathering clause, a post-enactment letter from Senator Farley to the Banking Department states that the grandfathering language was amended during the legislative process in response to issues raised regarding application of the amendment to a bank that had purchased but not yet installed additional check-cashing machines. See Letter from Sen. Farley to Banking Dep't Superintendent McCaul (April 22, 2002).
[11] We do not address whether other statutory provisions limit the number or location of check-cashing facilities operated by banks.
[12] You have also indicated that letters to the Banking Department from the Senate Sponsor, Senator Hugh T. Farley, and from members of the Senate Banking Committee regarding the Department's application of the 3/10 of a mile restriction to banks state that these members of the Legislature intended that the second part of the grandfathering clause receive the narrower interpretation, whereby only electronic check-cashing facilities of banks already in that business would be exempt. We recognize that statements of individual legislators authored after a statute's enactment are not necessarily a reliable indication of what the legislative body as a whole intended, see Matter ofConsol. Edison Co. of N.Y. v. Department of Envtl. Conservation,71 N.Y.2d 186, 195 n4 (1988), and our analysis of legislative intent does not rely upon these letters. We simply note that the legislators' views are consistent with our conclusion that the narrower interpretation is proper when the grandfathering clause is read in the context of section 374(3)'s purpose. SeeN.Y.A.A.D., Inc. v. State of New York, 1 N.Y.3d at 250-51
(noting that post-enactment affidavits and depositions of legislative sponsor and others involved in legislative process confirm other evidence of legislative intent).